[No. 19404. Department Two. March 22, 1926.]

THE STATE OF WASHINGTON, *Respondent*, v. H. EPSTEIN, *Appellant*.[1]

[1] FRAUDULENT CONVEYANCES (14)—SALES OF STOCK IN BULK—STATEMENT OF CREDITORS—VERIFICATION. Rem. Comp. Stat., § 5834, making it perjury for the vendor of any stock of goods in bulk to knowingly make or deliver the statement provided for in § 5832 which shall not include all the creditors, must be construed in connection with § 5832 requiring a written statement sworn to as provided in the form set out; and the statement is fatally defective unless sworn to before a notary public with his official seal attached, as required by Id., § 9904, governing instruments other than those to be used in court.

[2] PERJURY (2, 3)—INDICTMENT—DESCRIPTION OF OATH—AUTHORITY TO ADMINISTER—AFFIDAVIT UNDER BULK SALES LAW. An information for perjury as defined in Rem. Comp. Stat., § 5832, through the making and delivery of a statement of the creditors of a vendor of a stock of goods in bulk, is fatally defective where the statement set out is not a valid instrument through the lack of a notarial seal; and where it fails to allege that the notary before whom the oath was taken was in fact a notary qualified to administer an oath, or that the accused signed the purported affidavit.

Appeal from a judgment of the superior court for King county, Smith, J., entered March 7, 1925, upon a trial and conviction of perjury. Reversed.

*J. Kalina*, for appellant.

*Ewing D. Colvin* and *Ralph Hammer*, for respondent.

MITCHELL, J.—The appellant was prosecuted in the superior court of King county upon an information, the charging part of which is as follows:

"He, said H. Epstein, in the county of King, state of Washington, on or about the 28th day of October, A. D. 1924, then and there being the vendor of a stock of goods, wares and merchandise in bulk, to-wit: con-

[1]Reported in 244 Pac. 388.

tents of the Liberty Cabinet Shop, situated at 1202 E.
Pike street in the city of Seattle, said county and
state, wilfully, knowingly, unlawfully and feloniously
did make and deliver, and cause to be made and de-
livered to one Arthur Bacon, then and there bargainer
for and purchaser of said stock, wares and merchan-
dise, a written statement with reference to the business
of said H. Epstein, and the creditors of the said Liberty
Cabinet Shop, as provided by Section 5834 of Reming-
ton's Compiled Statutes of Washington, 1922, said
written statement being in words and figures following,
to-wit:

" 'AFFIDAVIT AND LIST OF CREDITORS

" 'Following is a true, full and correct list of the
names and addresses of all creditors of H. Epstein do-
ing business as Liberty Cabinet Shop, at No. 1202 East
Pike street in the town or city of Seattle, in the state
of Washington, on this twenty-eighth day of October,
1924, together with the amount of indebtedness due or
owing, or to become due or owing by him to each of
such creditors, at the time their stock of tools and
equipment, lumber etc., was sold to Arthur Bacon.

| NAME OF CREDITOR. | ADDRESS. | AMOUNT DUE. |
|---|---|---|
| None | None | None. |

STATE OF WASHINGTON ⎰
COUNTY OF KING ⎱ ss.

" 'Before me personally appeared H. Epstein who,
being by me first duly sworn upon his oath doth depose
and say that the foregoing Statement contains the
names of all the creditors of H. Epstein, together with
their addresses, and that the amount set opposite each
of said respective names is the amount now due and
owing and which shall become due and owing by him
to such creditors, and that there are no creditors hold-
ing claims due or which shall become due for or on
account of goods, wares or merchandise purchased
upon credit or on account of money borrowed to carry
on the business of which said goods are a part, other
than as set forth in said Statement, and in this affi-
davit, within the personal knowledge of affiant.

H. Epstein.

" 'Subscribed and sworn to before me
this 28th day of October, 1924.
          " 'Howard O. Durk.
" 'Notary Public in and for the state
of Washington, residing at Seattle.'
and said statement then and there being false and un-
true and then and there containing a false and untrue
statement in this to-wit, that there were other creditors,
as follows: (list of creditors with amount due each),
all as he said H. Epstein then and there well knew.''

A general demurrer to the information was over-
ruled. Defendant entered a plea of not guilty. He was
found guilty by a jury, was denied a motion in arrest
of judgment, and denied a new trial. He has appealed
from a judgment of guilty and a sentence for the crime
of perjury.

Section 5832, Rem. Comp. Stat., provides:

"It shall be the duty of every person who shall bar-
gain for, or purchase any stock of goods, wares or
merchandise in bulk, . . . before paying to the
vendor, . . . to demand of and receive from such
vendor, . . . a written statement, sworn to sub-
stantially as hereinafter provided, of the names and
addresses of all the creditors of said vendor, to whom
said vendor may be indebted, together with the amount
of the indebtedness due or owing, and to become due
or owing, by said vendor to each of such creditors; and
it shall be the duty of said vendor, or agent, to furnish
such statement, which shall be verified by an oath to
the following effect.''

The section then sets out the form of oath to be
signed by the vendor, followed by a jurat to be signed
by the officer taking the oath.

. Section 5834 of Rem. Comp. Stat. (referred to in the
information, and upon which the prosecution was had)
is as follows:

"Any vendor of any stock of goods, wares or mer-
chandise in bulk, or any person who is acting for, or on

behalf of any vendor, who shall knowingly or willfully make or deliver, or cause to be made or delivered a statement as provided for in section 5832 which shall not include the names of all creditors of such vendor with the correct amount due, and to become due to each of them or which shall contain any false or untrue statement shall be deemed guilty of perjury, and upon conviction thereof, shall be punished by imprisonment in the penitentiary for not less than one nor more than five years, or shall be fined in any sum not exceeding one thousand dollars.''

[1] In support of the general demurrer to the information, the overruling of which is assigned as error, and which was still further presented to the trial court by a motion in arrest of judgment, it is contended there is no allegation in the information that the appellant was sworn by the official whose name purports to be attached to the affidavit, or that he was an officer qualified at the time to administer an oath, and that the omission of these essential allegations renders the information fatally defective. In answer, it is argued on behalf of the state that the information is in the language of the statute, and that it contains a copy of the affidavit bearing appellant's signature and that of the notary who administered the oath; that it charges that appellant wilfully, knowingly and feloniously did make and deliver, and caused to be made and delivered, to one Arthur Bacon the statement contained in the affidavit; and that the allegation of the making and delivery of the instrument meets the requirements of the statute. But the argument falls short of a full and fair understanding of the plain language of the statute.

The section, 5834, is a criminal statute. It defines one way of committing perjury. It clearly speaks of a vendor of any stock of goods, wares or merchandise in bulk who shall knowingly or wilfully make or deliver, or cause to be made or delivered, *a statement as pro-*

*vided for in* § *5832.* A consideration of § 5834 must take in the other section. Now turning to § 5832, hereinabove quoted, it will be seen that the statement it provides for is a written instrument to be executed according to prescribed formalities. It is to be delivered to the purchaser before he pays anything for the goods, and is intended to give him notice (the only one the statute requires shall be notified) of all the indebtedness against the goods. The instrument in this case, set out in full in the information, does not comply with the statute. It purports to have been made before a notary public, who, as it appears upon the face of the instrument, signed it, but his official seal as notary public is not attached. It is fatally defective. No doubt such an instrument can be executed before a notary public, but to give it life he must attach his official seal.

This instrument, not being a certified oath to be used in any of the courts of the state, is controlled by § 9904, Rem. Comp. Stat., to the effect that

"When the notary public shall sign an instrument officially, he shall, in addition to his name and the words 'notary public' add his place of residence and affix his official seal."

In the cases of *Gates v. Brown,* 1 Wash. 470, 25 Pac. 914, and *Stetson & Post Mill Co. v. McDonald,* 5 Wash. 496, 32 Pac. 108, involving instruments not to be used in court, it was held to be necessary that the seal of the notary be attached to the jurat to make the instruments valid. In the case of *Griffin v. Catlin,* 25 Wash. 474, 65 Pac. 755, 87 Am. St. 782, it was held that the omission of the notary's place of residence in certifying to the acknowledgment of a mortgage was not fatal, but in that case it was stated:

"There are some cases, as *Gates v. Brown,* 1 Wash. 470 (25 Pac. 914), and *Stetson-Post Mill Co. v. McDonald,* 5 Wash. 496 (32 Pac. 108), cited by appellants

to sustain their contention, but in those cases the official seal was omitted, which was a material defect.''

[2]    This is not a case of an oath irregularly administered, but of an invalid instrument.  Independent of it, there is no allegation in the information that any oath was taken by the appellant; nor, even considering the affidavit as set out in the information, is there any allegation that he who purported to act as notary public was in fact a notary public qualified at that time to administer an oath.  It does not possess the verity that an official seal imports.  Nor is there any allegation that either the appellant or the notary signed the affidavit, other than impliedly in the assertion that the appellant made and delivered it, an invalid instrument.

The demurrer and the motion in arrest of judgment should have prevailed.

Reversed.

TOLMAN, C. J., MAIN, PARKER, and MACKINTOSH, JJ., concur.