[No. 27846. Department Two. July 29, 1940.]

THE STATE OF WASHINGTON, *Respondent*, v. TED INGELS, *Appellant.*[1]

[1] Reported in 104 P. (2d) 944.

*Edward M. Connelly,* for appellant.

*Ralph E. Foley* and *Leslie M. Carroll,* for respondent.

BEALS, J.—The defendant, Ted Ingels, was indicted by the grand jury of Spokane county, for the crime of perjury in the first degree. He moved to set aside the indictment and demurred thereto, later filing to the indictment a plea in bar, supported by his affidavit. His motion to set aside the indictment was denied, and his demurrer was overruled. His plea in bar was also denied. To all these rulings, defendant excepted. Defendant was then put upon his trial, the jury returning a verdict of guilty as charged.

Defendant seasonably filed a motion for arrest of judgment, or in the alternative for a new trial, which motions were denied. Judgment of guilty was then entered upon the verdict, and the defendant sentenced to confinement in the state penitentiary for not more than fifteen years. From this judgment and sentence, defendant has appealed.

Appellant assigns error upon the denial of his motion to set aside the indictment; upon the overruling of his demurrer to the indictment; and upon the denial of his plea in bar. He also contends that the trial court erred in denying his motion for a directed verdict of not guilty, based upon his challenge to the sufficiency of the evidence to sustain the crime charged. He also assigns error upon the denial of his motion for a transcript of his testimony before the grand jury in connec-

tion with the subject of campaign contributions, and upon the ruling of the trial court directing a witness who had reported the proceedings before the grand jury to read the entire transcript of appellant's testimony before that body, without permitting appellant and his counsel to previously examine such testimony. Appellant also assigns error upon the ruling of the trial court refusing to receive in evidence the stenographer's notes, when offered by appellant.

It is also contended by appellant that the trial court erred in commenting upon the evidence and upon the credibility of various witnesses; in admitting certain evidence over appellant's objection, and in refusing to strike other testimony on appellant's motion; in overruling his objection to questions propounded to appellant during his cross-examination by the prosecuting attorney; and in overruling his objections to questions propounded on cross-examination to a witness testifying on appellant's behalf.

It is also contended that the trial court erred in permitting a witness for the state, called on rebuttal, to testify, over appellant's objections, to facts which appellant contends concerned acts of appellant not connected with the facts in the case at bar; and in refusing to instruct the jury not to consider the testimony of four designated witnesses. Error is also assigned upon the giving of one instruction and upon the court's refusal to give an instruction requested by appellant; and upon the overruling of appellant's objection to certain portions of the arguments to the jury, as stated by counsel for the state. Finally, appellant contends that the trial court erred in denying his motion in arrest of judgment, and his motion for a new trial.

We shall first discuss appellant's contention that the trial court erred in denying his motion to set aside the indictment. Rem. Rev. Stat., § 2098 [P. C.

§ 9152], provides that, upon arraignment, one charged with crime may move to set aside the indictment or information. The grounds for such a motion are stated in § 2099 [P. C. § 9153], paragraph 5 reading as follows: "That the grand jury were not selected, drawn, summoned, impaneled, or sworn as prescribed by law."

Appellant contends that the grand jury was not selected, drawn, or impaneled as prescribed by law, and that for this reason the indictment returned against him by the grand jury should have been set aside. It appears that the judges of the superior court for Spokane county, having directed that a grand jury be called, ordered the county clerk to draw from the jury lists already prepared, the names of seventy-five persons, and to summon those called to appear before the judge who, for the time being, was acting as presiding judge.

Two of the persons whose names were drawn were deceased, and of the remaining seventy-three, forty were excused by the presiding judge or some other judge of the superior court for Spokane county, the remaining thirty-three persons presenting themselves before the presiding judge, as they were ordered to do. Appellant complains that some of the forty persons were excused for insufficient reasons, and that an arbitrary discretion was used in exempting them from liability to respond to the summons.

Rem. Rev. Stat., § 95 [P. C. § 8152], names certain classes of persons who shall not be compelled to serve as jurors; § 97-1 [P. C. § 8154a], makes it the duty of the superior court "to excuse from further jury service any juror" who, in the opinion of the court, has manifested unfitness to serve as a juror. This section does not apply to such a situation as is here presented. It is provided by § 100 [P. C. § 8157], that a person summoned as a juror may be excused from acting as

such for any reason stated in § 95, above referred to, or because of sickness of the juror, illness in his family, or serious prejudice to his business. The section continues: "When excused for any of the foregoing reasons, or for any reason deemed sufficient by the court," the name of the juror shall remain upon the jury list, etc.

The statute vests in the superior court a wide discretion to be exercised in the matter of excusing persons summoned for jury service from the performance of that duty; and from the record in the case at bar, it does not appear that, in excusing any of the forty persons above referred to as a group, from attendance before the court, the judicial discretion was abused or exercised to appellant's prejudice.

March 8, 1939, the thirty-three prospective grand jurors reported to the presiding judge. Court convened, and the judge presiding directed "that the work of qualifying and selecting seventeen grand jurors from the entire body of thirty-three prospective grand jurors reporting for duty," proceed forthwith. The prosecuting attorney for Spokane county and his deputy, being present, under direction of the court propounded to the persons presenting themselves for duty such questions as appeared appropriate to enlighten the court as to the qualifications, or the lack thereof, of the respective persons to act as grand jurors. Appellant complains of the fact that the prosecuting attorney and his deputy so examined the prospective jurors, and argues that, from the record, it should be held that the prosecuting attorney in effect challenged some of the prospective grand jurors, and that certain persons were excused from duty as the result of the prosecutor's action, to appellant's prejudice.

While, of course, the prosecuting attorney has no right of challenge against a prospective grand juror,

the record before us does not disclose that, in this instance, the prosecutor transcended his authority, or did anything save follow the instructions of the court in interrogating the prospective jurors and eliciting information helpful to the court in passing upon the qualifications of the persons under examination.

In the case of *State ex rel. Murphy v. Superior Court,* 82 Wash. 284, 144 Pac. 32, this court stated that, under the law, a superior judge might direct that persons summoned as jurors "should be examined as to their qualifications." Under the statute, the court might propound questions to the prospective jurors in an endeavor to elicit information as to their qualifications, or might direct the prosecuting attorney or some other competent person to examine the prospective jurors along the lines suggested. No reversible error was committed by the court in directing the prosecuting attorney and his deputy to examine the jurors.

Of the thirty-three persons examined, six were excused by the court. The names of the remaining twenty-seven were placed in the box, and the names of seventeen drawn therefrom, these seventeen being sworn as the grand jury, and thereafter acting as such, performing certain official acts, including the indictment of appellant. It is argued on behalf of appellant that the act of the court in excusing the six persons referred to was without authority of law, rendered the indictment returned by the grand jury obnoxious to appellant's motion to set the same aside, and that this court should hold that in denying appellant's motion, the trial court committed reversible error, which calls for reversal of the judgment appealed from.

In this connection, appellant relies upon the opinion of this court in the case of *State ex rel. Murphy v. Superior Court, supra.* In the case cited, this court, on an application for a writ of certiorari to review

an order of the superior court entered in connection with the matter of drawing a grand jury, held that the selection by the court from the group summoned from the jury list of seventeen persons to serve as a grand jury was not in accordance with the statute, and that an indictment returned by the grand jury so constituted, should be quashed. From the opinion it appears that from approximately forty of the seventy-eight persons summoned, the other persons having been excused, the judge presiding selected seventeen, and when, upon examination, some of these were found to be disqualified, or were excused, the judge selected from those remaining a sufficient number to make up the grand jury of seventeen persons, excusing the remainder of the veniremen present, without examination or the chance of being drawn as grand jurors. After holding the method followed by the superior court to have been illegal, the court suggested two methods of impaneling a grand jury, using the following language:

"A certain number of names might be drawn from the jury lists. The clerk might be directed to draw the names of individuals and qualify them singly until a sufficient number of jurors were obtained and these might be impaneled as grand jurors. Or, the judge might direct that all of those answering the summons of the court should be examined as to their qualifications and, out of the number so qualified, the clerk should draw by chance a sufficient number to make up the grand jury."

In using this language, the court evidently contemplated some examination of the persons summoned, in order to enable the judge to determine their qualifications and fitness to act as grand jurors. From the record before us, it appears that the names of the twenty-seven persons who had qualified to act were placed in the jury box, and that from these names the clerk drew,

in the usual manner, the names of seventeen persons, who were sworn as a grand jury.

In the case of *State v. Guthrie,* 185 Wash. 464, 56 P. (2d) 160, it was contended that the grand jury which indicted the defendant was illegally constituted, and that a motion to set aside the indictment should have been granted. This court discussed the case of *State ex rel. Murphy v. Superior Court, supra,* which was relied upon by the appellant, and, after citing texts and authorities, held that the grand jury whose acts were challenged had been legally constituted, and that the discretion vested in the trial court had not been abused. The same rule should apply here, and we hold that the grand jury which indicted appellant was legally constituted, and that the trial court did not err in overruling appellant's motion to set aside the indictment.

Appellant assigns error upon the order of the trial court overruling his demurrer to the indictment. Rem. Rev. Stat., § 2351 [P. C. § 9032], defining perjury in the first degree, provides that the statements made under oath, upon which a charge of perjury may thereafter be based, must relate to some "material matter" pertaining to the "proceeding, hearing, inquiry, or investigation" in connection with which the sworn statement was made. Rem. Rev. Stat., § 2352 [P. C. § 9033], reads as follows:

"It shall be no defense to a prosecution for perjury in the first degree that the defendant did not know the materiality of his false statement or that it did not in fact affect the proceeding in or for which it was made. It shall be sufficient that it was material and might have affected such proceeding."

The charging part of the indictment reads as follows:

"That the said defendant, Ted Ingels, in the county of Spokane, state of Washington, was called as a wit-

ness before this grand jury to testify in a hearing, inquiry and investigation then pending before this grand jury, before which grand jury, in which hearing, inquiry and investigation, an oath might lawfully be administered, and that an oath was lawfully administered to the said defendant, Ted Ingels, by the foreman of the grand jury, who was duly and lawfully authorized so to do, and after the said defendant, Ted Ingels, was so duly sworn before this grand jury and in said hearing, investigation and inquiry, as aforesaid, he, the said defendant, Ted Ingels, did testify before said grand jury on March 27th, 1939 and on March 29th, 1939, and the said defendant, Ted Ingels, did then and there in said hearing, inquiry and investigation, as aforesaid, unlawfully, feloniously, wilfully, corruptly, knowingly and contrary to said oath, testify and swear as true the following material matter pertaining to the collection of and the accounting for moneys received by said defendant, Ted Ingels, for the campaign expenses of John C. Stevenson, candidate for the governorship of the state of Washington in the 1936 election . . ."

The indictment then alleges that appellant testified that he received moneys by way of campaign contributions from only certain named employees of Spokane county, and that he received from the persons named $975 and no more, the amount of each individual contribution being listed. The indictment further alleges that appellant testified that he received no money from Sam Thompson and no money from Harry Ford, and continues by alleging that, in truth and in fact, other county employees in addition to those named by appellant contributed to the campaign fund, the names of several persons so contributing being set forth, and that appellant received moneys contributed by employees of Spokane county in excess of $975, the amounts contributed respectively by the persons named being set forth in the indictment, which continues with a direct allegation that appellant received from Sam

Thompson the sum of $125, and from Harry Ford the sum of one hundred dollars.

Appellant vigorously contends that the indictment does not show that the grand jury was inquiring into the commission of any crime, or describe any matter material to any offense which was being investigated by the grand jury, and concerning which the testimony of appellant, alleged to have been false, was given. Appellant also argues that the indictment does not allege that the grand jury was inquiring into the commission of any supposed crime relating either to the collection of campaign funds of John C. Stevenson, or any accounting for such funds so collected, or the expenditure thereof. Appellant then argues that, if the grand jury was simply engaged in a "political fishing expedition," the testimony of appellant did not relate to a material matter, and even though false, would afford no sufficient basis for an indictment for perjury.

The indictment discloses that the grand jury was concerned with facts "pertaining to the collection of, and the accounting for, moneys received" by appellant for the campaign fund described, and while the collection of funds to be expended during a political campaign is not an offense, the same might well constitute legitimate matter of inquiry before a grand jury, and an investigation concerning the accounting for funds collected would clearly be within the proper scope of inquiry of such an inquisitorial body.

In the case of *State v. Sang*, 184 Wash. 444, 51 P. (2d) 414, this court, discussing the functions of a grand jury, said:

"Any reasonable inquiry made or information sought by a grand jury engaged in investigating alleged crimes is entitled to the most open and candid respect, and, if a false answer or information given tends in any manner to hinder or delay the inquiry, it is a material

matter. *Smith v. State,* 91 Ark. 200, 120 S. W. 985; *Carroll v. United States,* 16 F. (2d) 951."

In this connection, the case of *State v. Vane,* 105 Wash. 170, 177 Pac. 728, is in point. The defendant was charged with the crime of perjury, committed in the course of the trial of one charged with horse stealing. From a judgment of guilty, the defendant appealed, assigning many errors, among them the alleged insufficiency of the information, appellant contending that the materiality of the alleged false testimony was not sufficiently set forth. While this court was evidently of the opinion that the information upon which the defendant was tried might not meet the strict test of the common law, it was held that the information was sufficient. Considering this phase of the case, the court cited Rem. 1915 Code, § 2065, subd. 6 (Rem. Rev. Stat., § 2065 [P. C. § 9281], subd. 6), reading as follows:

"That the act or omission charged as the crime is clearly and distinctly set forth in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended."

It was held that the information was sufficient, it having advised the defendant of the nature and character of the offense with which he was charged. In the case cited, no demurrer had been interposed to the information before the superior court, but this court examined the information to ascertain whether or not it was sufficient in form and substance to sustain a conviction, the appellant alleging that it was insufficient, in that it failed to "charge the materiality of the alleged perjurious testimony."

In support of his argument that the indictment does not state with sufficient particularity the material matter which was being investigated by the grand jury,

appellant cites several authorities. In the case of *State v. Dallagiovanna,* 69 Wash. 84, 124 Pac. 209, 40 L. R. A. (N. S.) 249, it appeared that the trial court had dismissed a prosecution for perjury upon sustaining a demurrer to the indictment. On appeal by the state, it was held that the ruling of the trial court was correct. It was charged that the defendant in the action, having been sworn as a witness before a committee of the Seattle city council, had given false testimony. This court held that the indictment was defective, in that it failed to show that the investigation being made by the committee was such as lay within its power to investigate by requiring the sworn testimony of witnesses. This being true, the indictment was properly held insufficient. The case cited is not here in point.

In the case of *State v. Epstein,* 138 Wash. 118, 244 Pac. 388, it was held that a prosecution for perjury could not be based upon an affidavit which did not bear the seal of the notary public who administered the oath. This case does not support appellant's contention.

Under this assignment of error, appellant's principal contention is that, as the amount of contributions collected for the Stevenson campaign had nothing to do with the commission of any crime, any investigation thereof by the grand jury was not material to the work of the grand jury, and no testimony pertaining to that matter could be material to the proper work of the jury, and that the indictment fails to charge the crime of perjury, since by statute that crime is defined as swearing falsely to a material matter. As the indictment charged appellant only with the giving of false testimony before the grand jury, whether or not such testimony revealed his participation in any offense against the laws is immaterial. Upon demurrer to the indictment, the question is: Does the indictment sufficiently allege the materiality of the testimony given

by appellant to some appropriate field of inquiry by the grand jury, and properly charge appellant with the crime of perjury?

Admitting, as appellant contends, that the collection of funds for a political campaign is not unlawful, and that false testimony before a grand jury referring to the collection of such funds would be material to a proper field of inquiry only in so far as it related to other matters being investigated, the matter of the accounting for funds so collected would be a proper matter for investigation.

The indictment here in question does not set forth *in extenso* facts which disclose in detail the subject matter of the investigation which the grand jury was making. It is, however, a well established rule of law that the materiality of a statement alleged to be perjured may be charged in an indictment either by an allegation or averment of materiality or by pleading facts which show materiality. *People v. De Carlo*, 124 Cal. 462, 57 Pac. 383; *People v. Ah Bean*, 77 Cal. 12, 18 Pac. 815; *State v. Horine*, 70 Kan. 256, 78 Pac. 411; *Rich v. United States*, 1 Okla. 354, 33 Pac. 804; *Thompson v. People*, 26 Colo. 496, 59 Pac. 51; *State v. Kellis*, 193 Ind. 619, 141 N. E. 337.

In 48 C. J. 878, § 128, is found the following:

"Materiality being an element of the offense, an indictment or information for perjury, in the absence of a statute to the contrary, must allege or show that the false statement on which the charge is based was material to the issue or matter involved, or it will be fatally defective. . . .

"It has frequently been held or stated that the showing as to materiality may be made either by a general averment to that effect or by the allegation of facts from which its materiality will appear; and hence, as hereinafter pointed out, where either method is used, the indictment or information is not bad for failure to use the other also."

The indictment in the case at bar alleges that appellant's testimony related to a material matter, which would probably be considered a sufficient averment of materiality, and in addition, alleges the materiality of appellant's testimony, in that in a hearing, inquiry, or investigation then pending before the grand jury, appellant testified to a matter "pertaining to the collection of, and the accounting for, moneys received" by appellant. Of course, testimony relating to funds collected or received by appellant would refer to the first step in an investigation concerning an accounting for such funds.

Appellant cites several authorities which he argues support his contention that the indictment now before us was obnoxious to a demurrer. Examination of these authorities, however, discloses that they refer to an exception to the rule above stated, the exception being that when it clearly appears from the allegations of the indictment that the testimony charged to be false *could not* have been material, a general averment of materiality cannot make the indictment sufficient. Examples of these authorities are the following:

In the case of *United States v. Lamson*, 165 Fed. 80, the defendant was charged by indictment with making a false oath to a return under the oleomargarine law, he having made a false affidavit as to the names and addresses of certain customers. The indictment was quashed because the affidavit was not authorized or required by any law.

In the case of *United States v. Cameron*, 282 Fed. 684, the defendant was charged with perjury alleged to have been committed in making false statements under oath, in connection with affidavits required by the corrupt practices act. The indictment charged that the defendant made a statement under oath, purporting, *inter alia*, to show all moneys received by him in

aid of his candidacy for the office of United States senator, and that the matter of such a statement was material to an investigation carried on by the grand jury. The indictment further alleged that the statement was false, in that it omitted the names of certain persons from whom the defendant had received contributions, and that it did not state the full amount so received. A demurrer to the indictment was sustained on several grounds, including the ground that the act pursuant to which the defendant was prosecuted did not attempt to limit the amount of money that a candidate might receive, but limited only the amount he might spend for campaign purposes, and for this reason, the amount of money delivered to the defendant was immaterial, and the defendant's statements under oath concerning the amount of his receipts had no bearing on any matter relating to the act, and that the perjured testimony, not relating to any material matter, could not be made the basis for a charge of perjury.

The authorities relied upon by appellant are not controlling. The trial court properly overruled appellant's demurrer to the indictment.

Appellant filed a written plea in bar of prosecution, supported by his affidavit and his testimony before the grand jury, and assigns error upon the ruling of the trial court denying this plea, which in effect amounted to sustaining a demurrer to the plea as matter of law. In support of his plea, appellant relies upon the fifth and fourteenth amendments to the constitution of the United States, upon Art. I, § 9, of the constitution of this state, and upon Rem. Rev. Stat., § 2149 [P. C. § 9219], which reads as follows:

"Any person offending against any provisions of the common law or statutes of the state of Washington or any ordinances of any municipality thereof, relating to bribery, grafting or corrupt solicitation, shall be a competent witness against any other person so offend-

ing and may be compelled to attend and testify upon any trial, hearing, proceeding or investigation in the same manner as any other person. But the testimony so given shall not be used in any prosecution or proceeding, civil or criminal, against the person so testifying. A person so testifying shall not thereafter be liable to indictment, information, prosecution, or punishment for such offense."

■ The section of the statute quoted does not apply to a prosecution for perjury, based upon testimony concerning criminal activities on the part of the witness.

In his affidavit, appellant states that, while the grand jury was in session, he was informed that one Lundquist, a former county employee, had been asserting that he had contributed $250 to appellant for the benefit of the Stevenson campaign fund; that appellant, knowing that Lundquist had in fact contributed no more than ten dollars to the fund, and appellant having in his possession a field book, or diary, which he believed had some bearing upon Lundquist's political activities, showed this diary to the prosecuting attorney, appellant being of the opinion that Lundquist would testify before the grand jury and there make statements derogatory to appellant. The affidavit further states that, on the advice of the prosecutor, appellant went before the grand jury as a voluntary witness, having first signed a written waiver of immunity from prosecution. He further states that the prosecutor then subjected appellant to a detailed examination concerning all moneys collected by appellant in connection with Mr. Stevenson's gubernatorial campaign, and that appellant, while unprepared to give exact testimony concerning these matters, answered the questions to the best of his recollection; that appellant was then required to bring to the grand jury all available records concerning the matter referred to; and that, in a subsequent examination, he

was asked to give definite figures as to individual contributions, in spite of his statement that his records were incomplete and inaccurate, and that his memory as to some matters was faulty.

Appellant contends that, had he not been lulled into a sense of security by the prosecutor, he would have refused to testify before the grand jury and would not have signed any waiver of immunity from prosecution, and that he was misled, cajoled, and entrapped into signing such a waiver. Appellant contends that his rights under the fifth amendment to the constitution of the United States, which guarantees to the citizen that he shall not be compelled in any criminal case to be a witness against himself, and that his rights under Art. I, § 9, of the constitution of the state of Washington, which guarantees the same right, and his rights under the statute above quoted, were violated, and that his plea in bar should have been sustained. In support of this assignment of error, appellant quotes at length from many authorities in which the rights of citizens under the constitutional provisions above referred to were upheld.

Respondent contends, first, that the plea in bar was irregular; and second, that even if a proper pleading, the trial court correctly sustained what was in effect a demurrer thereto.

■ The facts set forth by appellant in his affidavit do not show that he was misled or entrapped into testifying before the grand jury. In the case at bar, appellant was not tried for any offense save for swearing falsely before the grand jury. The crime of perjury differs from other crimes. A person may achieve immunity by testifying before a grand jury concerning offenses for which he might otherwise be tried, while at the same time such immunity does not extend to perjury committed in testifying before the grand jury.

This situation is referred to in Art. II, § 30, of the constitution of this state, and in Rem. Rev. Stat., § 2291 [P. C. § 8726], which provides that, as to certain cases in which the witness shall not be excused from giving testimony which tends to incriminate himself, he shall not be prosecuted on account of "any action, matter or thing concerning which he shall so testify, except for perjury or offering false evidence committed in such testimony." The authorities cited by appellant do not contemplate the crime of perjury, committed as charged to appellant, and are not here controlling.

Appellant's plea in bar, assuming such a pleading proper, was not well taken, and the trial court did not err in so holding.

■ Appellant assigns error upon the denial of appellant's challenge to the sufficiency of the evidence and his motion for a directed verdict of not guilty. In support of this assignment of error, appellant argues that the perjury alleged to have been committed by appellant consisted of his testimony concerning persons, named by him, who he stated contributed to the campaign fund. Concerning this, appellant testified before the grand jury that he had a list of all county employees, and a record of the amounts they gave him, or which were turned over to him, as far as his record showed, and again that the list concerning which he testified before the grand jury covered all that he had any record of. It is argued that appellant's testimony was so qualified that it did not amount to any positive statement, and that the evidence therefore does not support a conviction of the crime of perjury. He also contends that the good faith of the witness, or the lack thereof, should always be considered, as well as his state of mind, whether confused or otherwise, and his recollection of the matters concerning which he was testifying, whether good or bad.

In this connection, appellant cites the cases of *In re Bond*, 187 Wash. 200, 60 P. (2d) 54, and *State v. Ledford*, 195 Wash. 581, 81 P. (2d) 830.

Respondent argues that, considering appellant's entire testimony before the grand jury, the record supports the jury's verdict that appellant did commit perjury in his testimony given before the grand jury. As shown by the record in this case, appellant's testimony before the grand jury was at times indefinite, but on other occasions appellant made statements which the jury before which he was tried was justified in finding were definite and unqualified, and also untrue. It cannot be held that the trial court, as matter of law, should have ruled that the record was insufficient to support a verdict of guilty.

Appellant next contends that the trial court erred in denying his motion that he be furnished the complete transcript of his testimony before the grand jury on the subject of contributions to the Stevenson campaign fund. Almost immediately after the return of the indictment, appellant moved the court for an order directing the official court reporter who had taken down in shorthand the proceedings before the grand jury to prepare a copy of appellant's testimony before the grand jury, including statements made in connection therewith by the prosecuting attorney, his deputy, or any member of the grand jury. In his motion, appellant offered to pay the statutory cost of the transcript. Later, appellant filed an amended motion, asking for a transcript of the testimony and for leave to inspect the minutes and stenographic notes of the grand jury proceedings, in so far as they related to appellant's testimony before the grand jury. In support of his motion, appellant filed the affidavit of his counsel, stating the name of the court reporter and that his name was endorsed upon the indictment as

a witness for the state. The affidavit also stated that appellant needed the transcript asked for in connection with the preparation of his defense in this action.

After a hearing on the motion, the court entered a rather lengthy order, directing that a complete typewritten transcript of appellant's testimony be prepared and turned over to the prosecuting attorney, who was ordered to select therefrom such portions of appellant's testimony as constituted the alleged false testimony of appellant referred to in the indictment. It was directed that a separate transcript of this testimony be prepared, and with the complete transcript turned over to the judge before whom the case was proceeding, the judge to return the transcripts to the prosecutor, with directions that he deliver to appellant's counsel a copy of so much of the transcript of the testimony as the court might order.

Pursuant to this order, fifteen pages of typewritten excerpts of appellant's testimony before the grand jury were turned over to appellant's counsel, bearing the following certificate signed by the trial judge:

"That the foregoing transcript, page 1 to page 15, contains a full and complete record of the testimony of the defendant before the grand jury of the state of Washington, for Spokane county, at its hearing on March 27 and March 29, 1939, upon which testimony the grand jury returned the indictment for perjury against the defendant; that I have had before me a complete transcript of all the testimony of the defendant before said grand jury and said complete record does not disclose any testimony of the defendant that qualifies, modifies or weakens the testimony in the foregoing transcript."

It appears that a complete transcript of appellant's testimony relating to contributions to the Stevenson campaign fund comprised sixty-four typewritten pages, which transcript was not submitted to appel-

lant, nor exhibited to him, until the trial had proceeded for several days, when the reporter's notes of appellant's testimony were read to the jury.

Appellant contends that, in connection with this matter, the record discloses reversible error committed by the trial court. Laws of 1939, chapter 74, p. 200, § 1 (Rem. Rev. Stat. (Sup.), § 2030 [P. C. § 9237]), amended the preexisting statute in regard to grand juries by granting to the court authority to appoint a reporter to attend the sessions of the grand jury and make a record of their proceedings. The reporter who had been designated to attend the grand jury naturally refused to discuss any proceedings by or before that body. Apparently, the grand jury remained in session long after returning the indictment against appellant.

In the case of *State v. Morrison,* 175 Wash. 656, 27 P. (2d) 1065, it was held that the trial court had not committed reversible error in refusing to permit the defendant, who had been indicted by the grand jury, to inspect certain writings and documents in possession of the prosecuting attorney, and which had been considered by the grand jury. We called attention to the rule long established in this state "that such matters are peculiarly within the discretion of the trial court, and that we can interfere only when there has been a manifest abuse of discretion."

In the case of *State v. Rhoads,* 81 Ohio St. 397, 91 N. E. 186, 27 L. R. A. (N. S.) 558, it was held that one against whom an indictment was pending was not entitled to the minutes of the evidence before the grand jury, nor to inspect a transcript of such evidence, and that it was error for the court to order the prosecutor to deliver to the defendant the documents mentioned, or to direct that the defendant be permitted to inspect the same. Other authorities are to the same effect.

The general rule in connection with the matter now under discussion is stated in 2 Wharton's Criminal Evidence (11th ed.), 1355, § 785, as follows:

"It is also the general rule that an accused in a criminal case has no right to an inspection of the minutes of the grand jury returning the indictment against him, either before or during the trial, but this is a matter resting in the discretion of the court, and, where some special reason exists, such as to enable the accused to properly move to set aside the indictment, he may be permitted to inspect the minutes of the proceedings."

The trial court evidently gave to this phase of the case careful consideration, and was convinced that the records of the grand jury were still secret and not to be disclosed, save in so far as absolutely necessary. The record does not support a holding that the wide discretion enjoyed by the court in connection with such matters was abused or exercised to appellant's prejudice. This assignment of error is without merit.

Appellant contends that the court, during the course of the trial, erred in commenting upon the evidence and upon the credibility of various witnesses. Ten pages of appellant's brief are devoted to references to the record and argument in connection with this assignment. The trial occupied many days, ending October 17, 1939, and the ingenuity of able counsel continually exercised the vigilance of the trial court in an endeavor to maintain an orderly progression of evidence confined to the issues to be tried. Many unusual questions were presented and ably argued by respective counsel. Several of the witnesses were loquacious, and showed unusual persistence in wandering from the subject under discussion, and making statements incompetent as evidence.

We have carefully considered the references to the record made by appellant in connection with this assignment of error, but we are convinced that the trial

court did not transcend its authority, nor exercise the same unjustly, to appellant's prejudice. Many things occur in the course of a long, bitterly contested trial, which require immediate consideration and action by the court, and which render the conduct of such a trial arduous and difficult in the extreme.

We find no instance in which it should be held that the court commented on the evidence or indicated an opinion as to the credibility of any witness. This opinion is already unreasonably long, and detailed discussion of matters urged under this assignment of error would greatly add to its length. We find in the matters to which appellant calls our attention no prejudicial error of which appellant may take advantage.

By assignments of error Nos. 7 and 24, appellant brings before us for review rulings of the trial court directing Carroll Shuff, who reported the proceedings of the grand jury, to read appellant's entire testimony before the grand jury, without granting appellant and his counsel an opportunity to previously examine the transcript of such testimony, and also the ruling of the court permitting Mr. Shuff to read what he testified was his entire record of appellant's testimony, after refusing to admit Mr. Shuff's shorthand notes in evidence, on appellant's offer. As above stated, it appeared that appellant, sometime prior to the trial, had asked that a complete transcript of appellant's testimony before the grand jury concerning the matter of the campaign fund, together with incidental matters, be furnished appellant prior to the trial. This matter has been heretofore discussed.

During the course of the trial, the state offered to have all of appellant's testimony before the grand jury read to the trial jury, whereupon appellant's counsel strenuously insisted that he should be permitted to read the testimony before the same be heard by the

jury. The trial court refused to direct that this be done. Appellant complains that, by the ruling of the court, made in the presence of the jury, he was required either to consent to the reading to the jury of a long transcript of appellant's testimony, or to refuse to permit it to be read, it having been left to appellant to accept or reject the state's offer to read the testimony. Appellant accepted the offer, and the testimony was read.

Appellant does not argue that the testimony as read to the jury was not in fact a correct transcription of what he had said. He decided that he desired the testimony read, and it was read. He does not contend that, if he had had an opportunity to examine the transcript of the testimony in advance, he could or would have taken any steps which he did not take. He did not, at the trial, contend that the course followed was improper, save as above stated. On this state of the record, we cannot find that the action of the court resulted in prejudice to appellant. In any event, the matter was one concerning which the trial court enjoyed a large degree of discretion as to the course to be followed.

While the witness Shuff was testifying as a witness for the state, he was directed to read portions of appellant's testimony before the grand jury. He stated that he was reading certain pages of his notes, which he testified were correct, and that, prior to being called to the stand, the trial court had directed him to read only certain portions of appellant's testimony.

The matter of appellant's testimony before the grand jury had been the basis for much bitter controversy during the trial. It does not appear that appellant objected to the method of presenting this evidence to the trial jury, his contention being that the trial jury was entitled to know everything that appellant had testi-

fied before the grand jury. During the course of Mr. Shuff's testimony, however, appellant objected to his reading his notes, stating that he had supposed that the witness was merely to identify his notes in order to lay a foundation for the admission of the typewritten transcript which had been prepared. At this stage of the proceedings, counsel for the state said that he would offer the transcript in evidence. Answering a question by the court as to whether or not there was any objection to the admission of the transcription of the evidence, appellant's counsel said: "Oh, in its present form, yes."

At this point, the witness, in response to a question by the court, testified that his notes correctly showed appellant's testimony before the grand jury. On cross-examination, appellant had the reporter's note books marked for identification, and offered the note books in evidence. The witness testified that the notes were written by him, and that he used a shorthand system to some extent his own, and that it was unlikely that any person other than himself could read the notes. The witness also testified that, on the reverse sides of the pages containing appellant's testimony, there appeared the testimony of other witnesses before the grand jury, which was still in session. Under these circumstances, the court properly refused to admit the note books in evidence, on appellant's request.

During the trial, members of the grand jury testified as witnesses, and during the examination of these witnesses, as well as during the examination of Mr. Shuff, appellant was contending that all of appellant's testimony before the grand jury should be read to the trial jury. During the examination of a witness who had served on the grand jury, the state, as above set forth, offered to have all of appellant's testimony read to the trial jury, which was done.

Appellant now contends, citing *Preston v. Metropolitan Life Ins. Co.,* 198 Wash. 157, 87 P. (2d) 475, and *State v. Harkness,* 1 Wn. (2d) 530, 96 P. (2d) 460, that the reading of the reporter's notes was improper. Appellant wanted a transcription of his testimony before the grand jury introduced in evidence. He made no objection to the reading of his notes by the witness Shuff, upon the ground that that method of introducing evidence was incorrect. It does not appear that Mr. Shuff was examined as to his recollection of appellant's testimony, appellant's efforts being devoted to an attempt to introduce before the trial jury all of his testimony before the grand jury.

After the witness Shuff had testified from his notes, as abridged by the prior order of the trial court, appellant's counsel made the following proffer:

" . . . and the defendant further offers to prove by production of a complete transcript of the testimony given by him before the grand jury that the pages and lines of said complete transcript which have been deleted are relevant material and competent to the issues presented by the indictment and are a necessary part of the defendant's case. The defendant offers to prove by the witness Carroll Shuff that he has in his possession a copy of the complete transcript of the testimony given by the defendant Ingels before the grand jury on March 27th and March 29, 1939, and the defendant further offers a complete transcript of his testimony in evidence as being the entire and complete record of the testimony of the defendant given before the grand jury from which excerpts or portions have been read by the witness."

Apparently, appellant's objection to Mr. Shuff's testimony was based, first, upon the ground that appellant had not been permitted to examine the transcription of the reporter's notes prior to the trial, and second, upon the fact that Mr. Shuff's testimony in the

first instance was limited to only portions of appellant's testimony before the grand jury.

Upon the record, we find no merit in appellant's assignments of error above referred to.

 Appellant assigns error upon the admission, over his objection, of the testimony of seven witnesses called by the state—one as a witness in chief, and six on rebuttal. These witnesses testified concerning contributions to the campaign fund which they had made to appellant. Three of these witnesses were not named in either list of contributors set forth in the indictment. Others were included in the list which the state alleged appellant gave to the grand jury as names of the contributors to the fund. Concerning these witnesses, the indictment did not allege the giving of false testimony by appellant as to the amount of the contributions made by the witnesses. On the stand, the witnesses testified that they had delivered money to appellant as their contributions to the campaign fund, some of the witnesses testifying that the amounts which they had delivered to appellant exceeded the amounts which he had testified before the grand jury that the witnesses had delivered to him.

Appellant contends that the testimony of the witnesses concerned offenses not charged, was at variance with the charge, and that the indictment did not allege that appellant had committed any perjury with reference to these particular witnesses or their contributions, or that he had concealed from the grand jury anything in connection therewith.

The indictment alleged that appellant testified before the grand jury that certain persons only, whom he named, had contributed to the fund, whereas in fact other named persons had contributed thereto. As above stated, the names of some of the seven witnesses were not included in either list.

On cross-examination, appellant had named persons who had contributed, and testified as to the amount of each contribution.

Appellant argues that his objections to this testimony should have been sustained, while respondent contends that the testimony was admissible, as tending to prove that appellant knowingly and intentionally had testified falsely.

Some of the general rules of evidence do not apply to trials for perjury. In 1 Wharton's Criminal Evidence (11th ed.), 322, § 262, is found the following text:

"As stated elsewhere, other offenses are inadmissible when offered for the purpose of proving the crime charged, or to show that the defendant would be likely to commit the crime with which he is charged. But the evidence of other crimes is admissible to show motive, and, where relevant for this purpose, the admissibility is not affected by the fact that such evidence may prove other crimes,"

and on p. 324, § 263, the following:

"In perjury, it is relevant to show that the accused testified falsely in immaterial matters as well, to show intention and negative the idea of mistake."

In 16 C. J. 608, § 1192, the rule is stated:

"Evidence of the commission by accused of other offenses is not admissible in prosecutions for perjury or subornation of perjury, except where it is relevant to some issue in the case on trial. Evidence of other perjuries relating to the same oath and subject matter of perjury charged may be received on the question of intent, and evidence of perjury in a similar transaction is sometimes received to show knowledge, design, and system on the part of defendant."

Other authorities are to the same effect.

The cases of *State v. Wappenstein,* 67 Wash. 502, 121 Pac. 989; *State v. Craig,* 106 Wash. 630, 180 Pac. 896; *State v. Silver,* 152 Wash. 686, 279 Pac. 82; and *State v.*

*Shay,* 186 Wash. 154, 57 P. (2d) 401, are in point on different phases of this question.

The testimony admitted over appellant's objection was competent, as tending to show knowledge on the part of appellant, and for other reasons stated in the authorities cited.

■ Appellant contends that the prosecuting attorney wrongfully put appellant's character in issue by asking appellant on cross-examination, "Well, you bet a lot of Stevenson money on the races," to which, after his counsel interposed an objection, appellant answered, "Absolutely not." In the course of the discussion between counsel, the prosecuting attorney said: "I can bring a good many people—," not finishing the sentence. Appellant contends that this incident constitutes prejudicial error.

It appears from the statement of facts that the court had sustained an objection to a similar question, and after appellant from the witness stand interrupted the prosecuting attorney in the course of the latter's last remark above quoted, the court again sustained an objection to the question, and later instructed the jury to disregard the questions and appellant's answer, telling the jury that the matter had no bearing whatever on the case, and that the jury should wholly disregard the questions and put their minds in such a state as though the questions had never been asked. Without holding that upon the record and in view of prior testimony, the questions were improper, and expressing no opinion upon that question, we hold that the error, if any, was cured by the action of the court above referred to.

■ On cross-examination of John C. Stevenson, a witness for appellant, counsel for the state asked the witness if it was not a fact that the witness did not know whether or not he received all the money that

was collected from county employees in Spokane county for the witness' campaign. The witness answered that he had never received anything from Spokane county, that the money collected in that county was spent in that county, and that that county had "carried its own load in the campaign." Appellant contends that the portion of the examination of the witness referred to, and other portions of the cross-examination, amounted to an imputation of embezzlement on the part of appellant, and that reversible error resulted therefrom.

On examination of the witness in chief, appellant's counsel asked the witness whether or not to his knowledge appellant had ever received any money for the Stevenson campaign which was not by appellant expended in the course of the campaign. The record indicates beyond question that appellant's counsel on direct examination opened this phase of the inquiry, and that appellant cannot complain of the cross-examination of the witness. The answers of the witness were favorable to appellant, and we find no merit in this assignment of error.

Appellant next contends that the trial court erred in permitting questions to be propounded to William McCluskey, a witness on behalf of the state, concerning a conversation between the witness and appellant. In response to a general question as to incidents in connection with the political campaign, the witness testified that he had conversed with a certain person at the headquarters. When it appeared that appellant was not present at this conversation, the state asked the witness if he had thereafter talked to appellant, the witness then stating that he had told appellant that the person named had told the witness at the headquarters that money which the witness had paid to appellant for the campaign was not

being used for the purposes for which it had been contributed. The witness testified that appellant told the witness to continue delivering contributions to appellant, which the witness did.

Appellant argues that this testimony tended to prejudice him before the jury, and cites several decisions of this court. The evidence given by the witness was not hearsay, as it concerned a conversation between the witness and appellant. It does not appear that objections were interposed to any question as to conversations between the witness and appellant, and appellant's assignment of error in connection therewith is without merit.

By assignments of error Nos. 12 and 14, appellant complains of certain questions propounded to him on cross-examination, to which objections interposed by his counsel were overruled, and in permitting a witness for the state, one Frank Pupo, to testify in rebuttal concerning fifty dollars which the witness stated he turned over to appellant. The two assignments of error are closely related, and will be discussed together.

One Pete Mele was one of those who, according to the indictment, contributed money to appellant for the campaign, and whose name was omitted from the list of contributors given to the grand jury by appellant. On cross-examination, appellant admitted that Mele had once contributed five dollars. Appellant was asked if Mele had not asked appellant to put one George Pupo to work on the highways, telling appellant that Pupo's father was willing to contribute to the campaign fund, which question appellant answered in the negative. As to whether Pupo, Senior, had joined "The Hundred Dollar Club," appellant replied in the negative, but stated that he did not know whether the man had paid anything to that group. Later, on re-direct

examination, in response to a question by his counsel, appellant testified that Pupo, Senior, had paid fifty dollars into the fund. Much examination and cross-examination concerning this matter followed. Appellant testified that he did put George Pupo to work, partially in consideration of the fifty dollar contribution of the young man's father. Neither Pupo is named in the indictment, nor is it therein alleged that appellant received any contribution from either, or testified falsely as to his relations with either. In reply to several questions, appellant testified that he did not know, or had no recollection.

Appellant vigorously contends that the questions propounded by the state concerned some supposed crime in connection with the receipt of a bribe, and that the evidence was inadmissible and was prejudicial. The record does not indicate that Pupo, Senior, gave appellant money for appellant's own use. The testimony indicates that Pupo contributed to the political campaign fund, evidently hoping that his son would be put to work, and that the son was thereafter employed. Respondent refers to the testimony of Pete Mele, who testified that he had requested appellant to put young Pupo to work, and argues that it was proper to call this matter to appellant's attention on cross-examination, as bearing upon conversations between appellant and Mele, and that, if the testimony did suggest the commission of some other offense by appellant, the testimony was not incompetent, under the rule laid down in *State v. Baird*, 200 Wash. 227, 93 P. (2d) 409. It was perfectly competent for the state to attempt to prove that Mele had contributed to the fund by delivering money to appellant.

We are of the opinion that the bounds of proper cross-examination, under the circumstances shown by the record, were not exceeded in connection with the

matters now under discussion. In controlling cross-examination, a trial court exercises a considerable degree of discretion, and we are of the opinion that no reversible error was committed in connection with the matters above referred to. Contributions of money to political campaigns are sometimes taken into consideration in making political appointments. In the case at bar, appellant testified that the money contributed was not for appellant, or any fund to be used for his benefit.

Over appellant's objection, Frank Pupo, a witness for the state, testified that he, on behalf of his son, contributed fifty dollars to the campaign fund, delivering the money to appellant. Appellant argues that this testimony constituted an attempted impeachment of appellant on a collateral matter, and that the admission of such testimony constitutes reversible error. Upon the record, the subject matter of the testimony of which appellant complains was not collateral to the issue to be determined by the jury. The assignments of error are not well taken.

 Appellant next assigns error upon the overruling of his objections to questions propounded to appellant on cross-examination, which concerned a conversation between appellant and Edward M. Connelly, Esquire, his attorney. After appellant, on redirect examination, had testified that Frank Pupo did deliver to him fifty dollars for the campaign fund, the following occurred on cross-examination:

"MR. FOLEY: Q. Well, as a matter of fact, you now come into court, today, and admit to the jury that you got fifty dollars from Frank Pupo after you checked up and found out that I knew that Frank Pupo had paid you fifty dollars? Isn't that right? MR. CONNELLY: That is objected to as assuming something that is not proper on cross-examination. THE COURT: He may answer. A. I didn't know that you knew it, Mr. Foley.

Q. You didn't? Did you know that Mr. Connelly went out there yesterday and talked to Frank Pupo? A. I understand he did, yes. Q. And did he tell you that I had known it? A. He did not. MR. CONNELLY: I object to that. I think the statute protects him on what is told his counsel. MR. FOLEY: Q. Your counsel told you that I knew, according to Frank Pupo, that he had made this payment? Did he tell you that? MR. CONNELLY: That is objected to as not proper cross-examination and an inquiry concerning confidential matter. THE COURT: Overruled. A. He did not tell me that you knew it. (Question repeated.) MR. CONNELLY: I object that this is an improper inquiry referring to a confidential matter. A. Mr. Connelly never told me that you knew it. THE COURT: When a man submits himself as a witness he is subject to all the rules of cross-examination of any other witness, even though he is the defendant in the case. MR. FOLEY: Q. He didn't tell you that? A. No, sir, he didn't. Q. Well, did you know before he went out and talked to Frank Pupo? Did you know that he was going out to see him? A. I did not. Q. You didn't know that? A. No, sir. . . Q. Well, had you made it known then to your counsel before he went out there that you had gotten the fifty dollars? . . . A. I believe I had told Mr. Connelly."

Rem. Rev. Stat., § 1214 [P. C. § 7725] (2), reads as follows:

"An attorney or counselor shall not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment."

We discuss this assignment of error upon the basis that, under the statute, the same privilege accorded the attorney is extended to the client. 28 R. C. L. 548, § 138; 1 Wharton on Evidence (3d ed.), 568, § 583.

It should be noted that appellant answered all the questions in the negative, save that he testified that his counsel had talked to Frank Pupo, and stated that

he had told his counsel of the receipt of the fifty dollars.

According to some authorities, a party offering himself as a witness is subject to cross-examination as to matters which are privileged under statutes similar to that above referred to. The weight of authority, however, is the other way. 5 Jones, Commentaries on Evidence, 4098. As to cross-examination, however, of a party in connection with matters concerning which he has already testified, the rule is stated in 70 C. J. 403, § 544, as follows:

"The privilege extends to testimony of the client. He cannot be compelled to testify as to what he communicated to his attorney in confidence, or what was communicated to him by the attorney, but he cannot avail himself of the privilege to shield himself from a disclosure of facts which are a legitimate subject of inquiry, and, although there is authority to the contrary, it has been held that where he becomes a witness, he may be asked on cross-examination whether he ever communicated to his attorney a fact to which he has testified."

In 3 Wharton's Criminal Evidence (11th ed.), 2098, § 1236, the rule is stated as follows:

"While the privilege against revealing confidential communications between attorney and client may be waived by the client, the evidence of the waiver must be distinct and unequivocal. . . . At least, the mere fact that the client, whether he is an ordinary witness in a criminal prosecution or the accused, testifies does not constitute a waiver; nor does the fact that he calls his attorney as a witness without examining him as to such privileged communication. But if the client opens up the subject in his testimony by voluntarily testifying thereto, the privilege is deemed waived."

The supreme court of Minnesota, in the case of *State v. Tall*, 43 Minn. 273, 45 N. W. 449, considering the mat-

ter of cross-examination of a material witness for the defendant in a criminal action as to whether or not he had communicated to his attorney a fact to which he had testified, used the following language:

"The privilege belongs to the client, and not to the attorney, and where the client testifies to the fact in question there can be no reason, in general, why he may not be required to testify as to whether he had communicated that fact to his attorney."

The privilege accorded by the statute should be carefully guarded, but should not be unreasonably extended. To many of the questions propounded by counsel for the state, appellant gave negative replies, and these answers were accepted.

Appellant had already testified that Pupo had delivered to him a campaign fund contribution of fifty dollars, and this testimony was nowise contradicted. Under all the circumstances, the trial court did not err in permitting the state to ask appellant whether or not he had advised his counsel that appellant had received the contribution from Pupo.

Appellant assigns error upon a portion of the state's closing argument to the jury, as made by the deputy prosecuting attorney participating in the trial. Isabelle Cannon, a witness for the state, testified that she had applied to appellant for a position as stenographer, to which she was appointed, and in which employment she was still engaged at the time of the trial. The witness testified that, at appellant's suggestion, she contributed one hundred dollars to the campaign fund, paying five dollars each pay day. From the record, it appears that the following occurred:

"MR. CARROLL: (during argument) She has got to pay so much in order to get a job. That is what Billie Cannon told you. And he hesitated on Billie Cannon. He didn't know how far he could go, and that is the only testimony, as far as Ingels is concerned. The oath

means nothing. It is, 'How far can I go?' Was he fair with his counsel in the Pupo matter? Was he fair to his counsel in the Cannon matter? MR. CONNELLY: I am going to object to any observations about this man's fairness or unfairness with his counsel, if your Honor please. MR. CARROLL: That is the testimony in the case. MR. CONNELLY: It is not proper at all and it is not the testimony in the case. It is counsel's imagination and nothing else. THE COURT: You may proceed. MR. CONNELLY: I don't need to have him say whether my client has been fair or not. THE COURT: The Court will direct that there be no further comment as to the fairness or unfairness of the client to his counsel, except as you may be commenting on evidence that may be given. That is all. MR. CARROLL: That is what I had in mind, your Honor."

The record discloses no error of which appellant may complain.

██ Appellant also contends that the trial court erred in not limiting another portion of the argument of counsel for the state. In connection with this phase of the argument, the trial court remarked: "The jury understands the argument of counsel is argument, and you may proceed." We find no reversible error in connection with this phase of the case.

██ Appellant contends that the trial court erred in refusing to instruct the jury not to consider certain testimony relating to Messrs. Sam Thompson and Harry Ford, and in denying appellant's motion to instruct the jury to disregard such testimony. It was charged in the indictment that appellant committed perjury before the grand jury in failing to disclose that he had received certain cash contributions from Messrs. Thompson and Ford. Thompson testified that he delivered certain contributions to Elmo Smith and to one Woodward, and also that he gave some cash to appellant. Smith admitted that Thompson had made one payment to him, also testifying that he turned over to

appellant all the money he received. Ford testified that he handed Woodward fifty dollars as a contribution to appellant's own campaign, Woodward testifying that Ford gave him contributions for the Stevenson campaign fund, some of which Woodward turned over to appellant, and some he left with the clerk in appellant's office, with notations of the contributor. Woodward testified that Ford gave him money to turn over to appellant for the Stevenson campaign fund. The trial court did not err in refusing to strike the evidence.

Appellant also assigns error upon the refusal of the trial court to strike the testimony of four witnesses whose names were included in the list of persons from whom the state contended appellant had collected money for the campaign fund, but whose names he had not disclosed to the grand jury as contributors. The witnesses were all county employees, and three testified to contributions to the Stevenson campaign fund, and that the money had been paid to Elmo Smith, a clerk in appellant's office. One of the witnesses testified that he paid Smith fifty dollars, which was later returned to him to cover other money which he had disbursed for the advancement of the campaign. Another of the men testified that he was an employee under the county engineer (appellant), and contributed five dollars either to Elmo Smith or Pat Bonner, both of whom were employed in the same office with the witness. Smith testified that he did not remember whether or not these men had delivered him money, but he did testify that he turned over to appellant all the cash which he received. The testimony was competent for what it was worth, both as concerning the names of persons who contributed, and particularly the amount of cash which appellant received by way of contributions. No reversible error was committed by the trial

court in refusing to strike the testimony of which appellant complains.

■ Appellant next assigns error upon the ruling of the trial court permitting, as appellant contends, counsel for the state to cross-examine Elmo Smith, called as a witness for the prosecution. This witness was chief clerk in the county engineer's office, and occupied that position while appellant was county engineer. The record clearly indicates that Smith was an unwilling witness. In view of certain answers by the witness, to the effect that he did not remember some transactions concerning which he was being examined, counsel for the state claimed to be surprised, and the court later stated that counsel would be allowed to cross-examine the witness. The record discloses no error in this ruling.

■ Appellant assigns error upon one instruction given by the trial court, and upon the refusal of the trial court to give an instruction which appellant requested. In the instruction given, the trial court, after defining perjury and telling the jury that an inquiry by the grand jury is within the law, instructed the jury that the matters "concerning which the defendant is alleged, in the indictment to have testified are 'material matters' within the meaning of said law." Appellant contends that the trial court erred in instructing the jury that the matters concerning which the indictment alleges that appellant testified are material matters, contending that this instruction constitutes a comment upon the evidence and peremptory instruction upon a question of fact upon which the jury was entitled to pass. In the instruction requested by appellant and refused by the trial court, appellant asked that the jury be instructed that they could determine whether or not any alleged false statements claimed to

have been made by appellant related to a material matter.

In the case of *State v. Carpenter,* 130 Wash. 23, 225 Pac. 654, in which the defendant was charged with perjury, this court, considering an argument similar to that presented by appellant, said:

"It is further contended that the court erred in instructing the jury that the questions and answers set forth in the information were concerning material matters, because that question should have been left for the jury. The instruction was right. In a case of this character the materiality of the testimony is a question of law for the court to decide. 30 Cyc. 1456; 22 A. & E. Ency. Law 688."

In 48 C. J. 906, § 178, the rule is stated as follows:

"Although there is some authority to the contrary, the materiality or relevancy of a statement or testimony assigned as false is a question of law for the court, and should not be submitted to the jury."

The text is supported by many authorities, including the opinion of the supreme court of Kansas, in the case of *State v. Bingham,* 124 Kan. 61, 257 Pac. 951, in which the court used the following language:

"There is complaint of an instruction in which the jury were told that whether or not the testimony on which perjury was assigned was material was one for the determination of the court, and the jury was further advised that the testimony alleged was material to the issues tried in the former case, but that whether or not the defendant gave the testimony as charged was wholly within the province of the jury to determine, and that if he did give the testimony it was still wholly within the province of the jury to determine whether or not such testimony was willfully and corruptly false. The complaint of the instructions is that they were not applicable, in that no issue was formed and no evidence introduced in the case touching upon the materiality of such evidence. A distinct issue was formed as to the materiality of the alleged false testi-

mony when it was set forth in the information and a plea of not guilty had been entered. Whether the testimony charged to have been false was material was a question for the court to determine, and the legal question of materiality was not one for the jury to solve with or without evidence. The trial court correctly ruled that the materiality of the alleged false testimony was a question of law for the court, and it properly left to the jury the questions whether the defendant had testified as alleged, and also as to the falsity of the testimony given."

In the case at bar, considering the whole record, and particularly the testimony of some of the grand jurors, it appears beyond question that appellant's testimony before the grand jury related to a matter material to the investigation which the grand jury was conducting. The question of materiality or non-materiality being a matter for the court to determine, the trial court did not err in giving to the jury the instruction of which appellant complains, and in refusing to give the instruction appellant requested. The authorities cited by appellant in this connection are not in point.

We have carefully considered the twenty-four assignments of error argued by appellant in his briefs, and have studied the record and the authorities cited. We are convinced that the record discloses no reversible error entitling appellant to a new trial, and the judgment appealed from is accordingly affirmed.

BLAKE, C. J., STEINERT, and JEFFERS, JJ., concur.