[No. 2517–2.   Division Two.   January 31, 1978.]

THE STATE OF WASHINGTON, *Respondent,* v. FRANK L. VANDENBERG, *Appellant.*

*Lawrence W. Moore,* for appellant.

*Donald Herron, Prosecuting Attorney,* and *Joseph D. Mladinov, Senior Deputy,* for respondent.

PETRIE, J.—The defendant, Frank L. Vandenberg, appeals from a judgment and sentence imposed following his conviction on two counts of grand larceny. His sole contention on appeal is that the trial court erred by directing a defense witness' former attorney to testify as to confidential communications made between the witness and the attorney. We agree and remand the cause for new trial.

Some background facts are necessary to a full understanding of the issue presented on appeal.

Armed with a valid warrant to search the home occupied by Mr. and Mrs. Vandenberg, police seized a conglomerate of allegedly stolen property. Mr. and Mrs. Vandenberg were each charged with three counts of grand larceny: count 1, chairs; count 2, rug and draperies; and count 3, miscellaneous items. Mrs. Vandenberg, represented by counsel, entered a plea of guilty to count 3, and the other two counts were dismissed against her. In the case at bench, however, count 3 was dismissed against Mr. Vandenberg, and he proceeded to trial on counts 1 and 2, *i.e.,* the chairs, rug, and draperies.

At Mr. Vandenberg's trial, his wife testified that the chairs, rug, and draperies were brought to the Vandenberg home by a former houseguest and that neither she nor her husband was aware that those items had been stolen. On cross-examination she acknowledged, without objection, that she had previously accused her husband of bringing stolen property into their house. However, she insisted that the accusation pertained to the items of miscellaneous property embraced in count 3, and specifically did not pertain to the chairs, rug, and draperies set forth in counts 1 and 2. When asked whether she had ever offered to testify against her husband, she replied that she had never been asked to do so. She also testified that she had communicated all this information to her probation officer, but she was never asked about any communications of any kind with her attorney. Indeed, from her testimony, there is no indication that she was ever represented by an attorney for any purpose whatsoever.

On rebuttal, the attorney who represented Mrs. Vandenberg at the time she entered a plea of guilty to count 3 was called as a prosecution witness.[1] Over vigorous objection by Mr. Vandenberg's counsel, including a statement that "she has indicated to me that she has not waived her privilege,"

---

[1]There is an indication in the record that this attorney/witness at one point represented both Mr. and Mrs. Vandenberg. It is not likely, however, that all of the conversations between Mrs. Vandenberg and her attorney occurred when he represented both parties.

the trial court expressed an intention to entertain the witness' testimony solely to impeach Mrs. Vandenberg's credibility. Her former attorney was directed to, and did, testify that in his professional capacity he had several conversations with Mrs. Vandenberg about the property which the police seized from the Vandenberg home; that Mrs. Vandenberg told him her husband brought the seized property into the house with knowledge of its stolen nature; that he (the witness) understood she was referring to "the whole bulk of these items when she made the statement,"; and that "she told me she would testify as to her knowledge."

Later, on surrebuttal Mrs. Vandenberg testified, without expressly claiming the attorney–client privilege, that when she discussed with her attorney her husband's knowledge of stolen property she was not talking about the items set forth in counts 1 and 2.

When he directed the attorney to testify, the trial judge explained his ruling as follows:

> [S]he has testified here concerning her intentions and concerning what her husband told her and, by doing that, she has waived it and it doesn't exist anymore, and the privilege applies only as long as the communication remains confidential. When she takes a public position, under oath in court, then she has waived it and it isn't there anymore; so Mr. [Attorney] is free to testify and he is directed by the court to testify as to the matters that he has testified about. I don't think we need to get into the question of materiality, it is clearly material, it is for impeachment only, and I propose to instruct the jury that it is for impeachment only.[2]

There is respectable authority for the trial court's ruling. *See State v. Ingels*, 4 Wn.2d 676, 104 P.2d 944 (1940). Indeed, Professor Meisenholder cites *Ingels* for the proposition that a client/witness who testifies to a fact may be

---

[2]Trial counsel noted several objections to the court, but did not bring to the court's attention the prosecution's failure to lay a proper foundation which would permit *any* third party's testimony as to prior inconsistent statements by Mrs. Vandenberg. *See May v. Wright*, 62 Wn.2d 69, 381 P.2d 601 (1963).

asked whether he communicated that fact to his attorney. 5 R. Meisenholder, Wash. Prac. § 203, at 195 (1965). Obviously, if the client/witness may be so examined, it is on the theory that the client has impliedly waived the attorney-client privilege by virtue of the manner in which he has testified as a witness.

An unduly broad interpretation of the holding in *Ingels* is not warranted. Close scrutiny will reveal that the court imposed its own conscriptive language upon its apparent, ultimate holding. One Ted Ingels was indicted by a grand jury which had under investigation the matter of accounting for funds contributed toward the political campaign of a gubernatorial candidate in 1936. Mr. Ingels allegedly testified before that jury that he had received campaign contributions from only certain named employees of Spokane County and that the total of those contributions was $975. The indictment charging him with first-degree perjury alleged that he had falsely testified because, in truth and in fact, he had received campaign funds from other employees of Spokane County and that the total of funds received exceeded $975.

On his perjury trial, Mr. Ingels testified that he did receive a contribution of $50 from Frank Pupo, a person whom Mr. Ingels did not name when testifying before the grand jury. On cross examination the prosecutor elicited from Mr. Ingels, over objection, an acknowledgement that he had told his counsel of receipt of the $50 from Pupo and that his counsel had recently talked to Pupo. Additionally, Ingels testified on cross examination that he did not know the prosecutor knew of the $50 contribution by Pupo, that his counsel did not tell him of the prosecutor's knowledge, and that he did not know in advance that his counsel was going to talk to Pupo.

The court noted that to many of the challenged questions Mr. Ingels had given negative replies and those answers were accepted, and also noted that Ingels had already testified that Pupo had given him the $50, which testimony was nowise contradicted. The court thereupon concluded that,

*under all the circumstances,* the trial court did not err in permitting the prosecutor to ask Ingels whether or not he had advised his counsel that he (Ingels) had received the contribution from Pupo.

As to another evidentiary issue in the appeal, the court had announced that some of the general rules of evidence do not apply to a trial for perjury.

We are unable to divine which precise circumstances the court had in mind when holding that the trial court did not err, but we do not believe the court meant to hold that any time a client/witness testifies to a fact he thereby waives the attorney–client privilege if he happens also to have discussed that subject with his attorney in confidence.

In some jurisdictions, under specific statutory restraints, a client who simply testifies in his own behalf may be deemed to have waived the attorney–client privilege. *See Janssen v. Kohler,* 71 N.D. 247, 299 N.W. 900 (1941); *State v. Crissman,* 31 Ohio App. 2d 170, 287 N.E.2d 642 (1971); *McNamee v. First Nat'l Bank,* 88 Ore. 636, 172 P. 801 (1918).

We believe, however, that a better rule of law was declared in *Martin v. Shaen,* 22 Wn.2d 505, 156 P.2d 681 (1945). In that case, the court adopted one of the "distinctions" suggested by Dean Wigmore:

> "The client's offer of his own or the attorney's testimony as to a *part of any communication* to the attorney is a waiver as to the whole of that communication."

*Martin v. Shaen, supra* at 513.

The *six* distinctions offered by Dean Wigmore suggest a more nearly complete set of circumstances for ascertaining whether or not the attorney–client privilege has been waived:

> (1) The client's offer of his *own testimony* in the cause *at large* is not a waiver for the purpose either of cross–examining him to the communications or of calling the attorney to prove them. Otherwise the privilege of consultation would be exercised only at the penalty of closing the client's own mouth on the stand.

(2) The client's offer of the *attorney's testimony* in the cause at large is not a waiver so far as the attorney's knowledge has been acquired casually as an ordinary witness. But otherwise it is a waiver for, considering that the attorney ought in general not to be used as a witness (§ 1911 *supra*), the client ought to be discouraged from utilizing his attorney in double and inconsistent capacities, and if he has seen fit to furnish him knowledge as a witness, he should deny himself the right to invoke the attorney's function as an adviser.

(3) The client's offer of his *own testimony* as to *specific facts* about which he has happened to communicate with the attorney is not a waiver, for the same reason as in paragraph (1) *supra*. But his offer of the *attorney's testimony* as to such specific facts is a waiver, for the same reason as in paragraph (2) *supra*.

(4) The client's offer of his own or the attorney's testimony as to a *specific communication* to the attorney is a waiver as to all other communications to the attorney on the same matter. This is so because the privilege of secret consultation is intended only as an incidental means of defense, and not as an independent means of attack, and to use it in the latter character is to abandon it in the former.

(5) The client's offer of his own or the attorney's testimony as to a *part of any communication* to the attorney is a waiver as to the whole of that communication, on the analogy of the principle of completeness (§ 2113 *supra*).

(6) When the client alleges a breach of duty to him by the attorney, the privilege is waived as to all communications relevant to that issue.

(Footnote omitted.) 8 J. Wigmore, *Evidence* § 2327, at 637–38 (McNaughton rev. 1961).

We hold, as suggested by the foregoing presentation, that the client's voluntary offer of his own testimony as to specific facts about which he has happened to communicate with the attorney is not a waiver of the attorney–client privilege as to any privileged communication. *See Rienzo v. Santangelo,* 160 Conn. 391, 279 A.2d 565 (1971); *Harrison v. State,* 276 Md. 122, 345 A.2d 830 (1975).

At this point we note that on surrebuttal Mrs. Vandenberg did testify as to her version of the specific

communications with her attorney, and that she did not at that time specifically claim the exemption. Clearly, the privilege against examination of a witness upon matters of confidential communication is personal to the client and cannot be asserted by a third party who is not in a position to claim the privilege. *State v. Emmanuel,* 42 Wn.2d 799, 259 P.2d 845 (1953).

Mrs. Vandenberg's testimony on surrebuttal, however, did not waive any "confidentiality." At the time she was first asked (on surrebuttal) about any conversations with her attorney, the jury had been made aware of the attorney's version of those conversations for the purpose of impeaching Mrs. Vandenberg's credibility; the conversations had become public knowledge. By testifying, even under the specific direction of the court, the attorney/witness destroyed whatever previous confidentiality attached to those conversations.

We do not intend by this latter statement to suggest any improper performance of duty by Mrs. Vandenberg's former attorney. The appropriate choice between alternative courses of action as suggested in *Dike v. Dike,* 75 Wn.2d 1, 448 P.2d 490 (1968) for attorneys confronted with these situations is not always clear. Factors extraneous to the record before us may have borne substantial influence on the specific choice made.

We do conclude, however, Mr. Vandenberg was denied a constitutionally guaranteed fair trial, and the judgment must be reversed for new trial.

PEARSON, C.J., and REED, J., concur.

Reconsideration denied March 1, 1978.

Review denied by Supreme Court July 21, 1978.