[No. 48355-8. En Banc. February 10, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. ISAAC LEE PAM, *Petitioner.*

Rosemary Bordlemay and Mark Leemon of Seattle–King County Public Defender Association, for petitioner.

Norm Maleng, Prosecuting Attorney, and James E. Lobsenz, Deputy, for respondent.

DORE, J.—Isaac Pam was identified as one of two men who robbed an auto supply store in Seattle in July 1979. Four witnesses testified that Pam carried a gun or shotgun. Witness Dill testified that he recognized Pam because he and Pam had been incarcerated at the same time. Dill stated that he called out to Pam, who pointed the weapon at him and warned him to "get away" before fleeing the scene. The weapon fell apart as Pam was running away. No shots were fired. Police recovered the wooden forestock of "what appeared to be a shotgun," as one officer testified. The remainder of the weapon was not introduced into evidence. The trial judge, over objection, admitted Pam's prior robbery, forgery and narcotics convictions. Because of this ruling, Pam declined to testify.

On May 12, 1980, Pam was found guilty of first degree robbery while armed with a deadly weapon and second degree assault while armed with a deadly weapon and a firearm. Pam appealed and the Court of Appeals affirmed Pam's judgment and sentence. State v. Pam, 30 Wn. App. 471, 635 P.2d 766 (1981).

I

Defendant Pam appeals to this court, alleging the following error:

1. The court erred in submitting to the jury a special verdict form asking whether the defendant was armed with a "deadly weapon" during the commission of the crime, and also erred in not instructing the jury separately as to the State's burden of proof, as required under State v. Tongate, 93 Wn.2d 751, 613 P.2d 121 (1980).

2. The court erred in ruling to allow the defendant's prior convictions to be placed in the record in the event Pam testified.

3. The court erred in admitting testimony concerning the defendant's prior incarceration for a crime for which he was never convicted.

## II

Initially, we consider the use of the deadly weapon statutes to restrict the Board of Prison Terms and Paroles' power to parole Pam. The jury was given special verdict form A, which read:

We, the jury in the above-entitled cause, do return a special verdict by answering as follows: Was the defendant ISAAC LEE PAM armed with a deadly weapon at the time of the commission of the crime of Robbery in the First Degree as charged in Count I?

Clerk's Papers, at 40.

Special verdict form B read:

We, the jury in the above-entitled cause, do return a special verdict as follows: (1) Was the defendant ISAAC LEE PAM armed with a deadly weapon at the time of the commission of the offense of Assault 2° as charged in Count II? (2) If the answer to question (1) is "yes," was the deadly weapon a firearm?

Clerk's Papers, at 39.

Through the use of these special verdict forms, the jury found Pam was armed with a firearm at the time he committed second degree assault and was also armed with a deadly weapon at the time he committed first degree robbery. The court failed, however, to instruct the jury that the separate deadly weapon and firearm findings must be proved beyond a reasonable doubt, as required under *State v. Tongate*, 93 Wn.2d 751, 613 P.2d 121 (1980), decided June 19, 1980. In the present case, the jury was instructed only that the State had the burden of proving each element of the crime beyond a reasonable doubt.

■ Under RCW 9.95.040,[1] the State must prove the presence of a deadly weapon *in fact* in order to permit a special finding that the defendant was armed with a deadly weapon. A defendant's penalty cannot be enhanced if the evidence establishes only that he was armed with a gun-like, but nondeadly, object. *State v. Tongate, supra.* Under RCW 9.41.025,[2] the State must prove the presence of a

---

[1]RCW 9.95.040 provides in part:

"The following limitations are placed on the board of prison terms and paroles with regard to fixing the duration of confinement in certain cases, notwithstanding any provisions of law specifying a lesser sentence, to wit:

"(1) For a person not previously convicted of a felony but armed with a deadly weapon at the time of the commission of his offense, the duration of confinement shall not be fixed at less than five years.

"(2) For a person previously convicted of a felony either in this state or elsewhere and who was armed with a deadly weapon at the time of the commission of his offense, the duration of confinement shall not be fixed at less than seven and one-half years.

"The words 'deadly weapon,' as used in this section include, but are not limited to, any instrument known as a blackjack, sling shot, billy, sand club, sandbag, metal knuckles, any dirk, dagger, pistol, revolver, or any other firearm, any knife having a blade longer than three inches, any razor with an unguarded blade, and any metal pipe or bar used or intended to be used as a club, any explosive, and any weapon containing poisonous or injurious gas."

[2]RCW 9.41.025 provides in part:

"Any person who shall commit or attempt to commit any felony, including but not limited to assault in the first degree, rape in the first degree, burglary in the first degree, robbery in the first degree, riot, or any other felony which includes as an element of the crime the fact that the accused was armed with a firearm, or any misdemeanor or gross misdemeanor categorized herein as inherently dangerous, while armed with, or in the possession of any firearm, shall upon conviction, in addition to the penalty provided by statute for the crime committed without use or possession of a firearm, be imprisoned as herein provided:

"(1) For the first offense the court shall impose a sentence of not less than five years, which sentence shall not be suspended or deferred;

"(2) For a second offense, or if, in the case of a first conviction of violation of any provision of this section, the offender shall previously have been convicted of violation of the laws of the United States or of any other state, territory, or district relating to the use or possession of a firearm while committing or attempting to commit a crime, the offender shall be imprisoned for not less than seven and one-half years, which sentence shall not be suspended or deferred;

"(3) For a third or subsequent offense, or if the offender shall previously have been convicted two or more times in the aggregate of any violation of the law of the United States or of any other state, territory, or district relating to the use or possession of a firearm while committing or attempting to commit a crime, the

"firearm," which is defined under WPIC 2.10 as a "weapon from which a projectile may be fired by an explosive such as gun powder". A gun–like object incapable of being fired is not a "firearm" under this definition.

An error infringing upon a defendant's constitutional rights is presumed prejudicial, and the State has the burden of proving that the error was harmless. *State v. Caldwell,* 94 Wn.2d 614, 618 P.2d 508 (1980).[3] The constitutional error cannot be declared harmless unless it was "harmless beyond a reasonable doubt". *State v. Stephens,* 93 Wn.2d 186, 607 P.2d 304 (1980). A "harmless error" is one which is "'*trivial,* or *formal,* or *merely academic,* and was not prejudicial to the substantial rights of the party assigning it, and *in no way affected the final outcome of the case.'" State v. Wanrow,* 88 Wn.2d 221, 237, 559 P.2d 548 (1977).

In the present case, the trial judge's error in failing to instruct the jury that it must find beyond a reasonable doubt that defendant used a firearm and/or deadly weapon was not a harmless error. A reasonable doubt is a doubt for which a reason based upon the evidence exists. *State v. Tanzymore,* 54 Wn.2d 290, 340 P.2d 178 (1959); WPIC 4.01. Here, the weapon fell apart as the defendant was running away. Police recovered the wooden forestock of "what appeared to be a shotgun", as one officer testified. The remainder of the weapon was not introduced into evidence. Unlike *State v. Hall,* 95 Wn.2d 536, 627 P.2d 101 (1981)

---

offender shall be imprisoned for not less than fifteen years, which sentence shall not be suspended or deferred;"

[3]The defendant urges that, although defense counsel failed to object to the lack of instruction at the trial court level, this issue involves a "manifest error affecting a constitutional right" which may be raised for the first time on appeal under RAP 2.5(a)(3). This court has not previously determined if this issue may be raised for the first time on appeal, finding it unnecessary to reach the constitutional issue where failure to instruct was harmless beyond a reasonable doubt. *State v. Hall,* 95 Wn.2d 536, 627 P.2d 101 (1981); *State v. Claborn,* 95 Wn.2d 629, 628 P.2d 467 (1981). *See also State v. Thompson,* 95 Wn.2d 888, 632 P.2d 50 (1981).

and *State v. Claborn*, 95 Wn.2d 629, 628 P.2d 467 (1981) in our footnote 3 in which we concluded the court's error in failing to instruct was harmless, no shots were fired. Additionally, no bullets were recovered. With the appropriate instructions, a rational jury could have a reasonable doubt as to the operability of the weapon.

The claimed error in such instruction was raised for the first time on appeal. An appellate court will consider such error only when the giving or failure to give an instruction invades a fundamental constitutional right of the accused (such as the right to a jury trial) and would probably change the result of the case. *State v. Green*, 94 Wn.2d 216, 231, 616 P.2d 628 (1980); Const. art. 1, § 21. In *Tongate*, this court rejected a distinction between the proof required for elements of an offense under *In re Winship*, 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970) (beyond a reasonable doubt by constitutional mandate) and the proof required for a sentence enhancement provision. In so doing, we cited *Mullaney v. Wilbur*, 421 U.S. 684, 698, 44 L. Ed. 2d 508, 95 S. Ct. 1881 (1975):

> The safeguards of due process are not rendered unavailing simply because a determination may already have been reached that would stigmatize the defendant and that might lead to a significant impairment of personal liberty. . . . [W]hen viewed in terms of the potential difference in restrictions of personal liberty attendant to each conviction, the distinction established by Maine between murder and manslaughter may be of greater importance than the difference between guilt or innocence for many lesser crimes.

In *Tongate*, we also relied upon *Sandstrom v. Montana*, 442 U.S. 510, 61 L. Ed. 2d 39, 99 S. Ct. 2450 (1979) in declining to assume that a reasonable jury, in the absence of an explicit instruction on the standard of proof, will understand the applicable standard to be applied to the separate finding where the fact to be found is not an element of the crime as charged. We hold that the trial court's failure to instruct in this instance is prejudicial error affecting defendant's constitutional rights and that we will

consider this issue on appeal.

■ The ultimate issue than becomes the retroactivity of *Tongate.* We find persuasive and controlling the United States Supreme Court's reasoning in the recent case of *United States v. Johnson,* ___ U.S. ___, 73 L. Ed. 2d 202, 102 S. Ct. 2579 (1982). There, the Court applied a Fourth Amendment decision retroactively to all convictions that were not yet final at the time the decision was rendered. The Court held this rule would apply to all Fourth Amendment decisions, except those cases clearly controlled by existing retroactivity precedents.[4]

The *Johnson* Court reasoned that the retroactive application of *Payton v. New York,* 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980) to all previously nonfinal convictions would provide a principle of decisionmaking consistent with the Court's original understanding of retroactivity expressed in *Linkletter v. Walker,* 381 U.S. 618, 14 L. Ed. 2d 601, 85 S. Ct. 1731 (1965) and *Tehan v. United States ex rel. Shott,* 382 U.S. 406, 15 L. Ed. 2d 453, 86 S. Ct. 459 (1966). The *Johnson* Court also reasoned that such a principle is capable of general applicability, thus preventing an artificial restructuring of "expectations legitimately created by extant law". *Johnson,* 73 L. Ed. 2d at 217.

---

[4]Where a decision of the court merely applies settled principles of law to a new set of facts, the rule of the later case applies in earlier cases. *See, e.g., Dunaway v. New York,* 442 U.S. 200, 60 L. Ed. 2d 824, 99 S. Ct. 2248 (1979); *Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969); *Desist v. United States,* 394 U.S. 244, 22 L. Ed. 2d 248, 89 S. Ct. 1030 (1969). In such cases, it has been a foregone conclusion that the rule of the later case applies in earlier cases, because the later decision has not, in fact, altered that rule in any material way. Conversely, where the court has declared a rule of criminal procedure to be a clear break with the past, the new principle is not applied retroactively. *See United States v. Peltier,* 422 U.S. 531, 547 n.5, 45 L. Ed. 2d 374, 95 S. Ct. 2313 (1975) (Brennan, J., dissenting) (collecting cases). The Court has recognized full retroactivity as a necessary adjunct to a ruling that a trial court lacked authority to convict or punish a criminal in the first place. In such cases, the Court has relied less on the technique of retroactive application than on the notion that the prior inconsistent judgments or sentences were void ab initio. *See, e.g., Moore v. Illinois,* 408 U.S. 786, 33 L. Ed. 2d 706, 92 S. Ct. 2562 (1972); *Ashe v. Swenson,* 397 U.S. 436, 25 L. Ed. 2d 469, 90 S. Ct. 1189 (1970). Our decision in *State v. Tongate,* 93 Wn.2d 751, 613 P.2d 121 (1980) fits none of these three categories.

Additionally, the Court found its application of *Payton* to cases pending on direct review to comport with judicial responsibilities "to do justice to each litigant on the merits of his own case." *Desist v. United States,* 394 U.S. 244, 259, 22 L. Ed. 2d 248, 89 S. Ct. 1030 (1969) (Harlan, J., dissenting). The application of this approach in *Johnson* also furthered the Court's goal of treating similarly situated defendants in a like manner. We are compelled to adopt the rationale of *Johnson* in the present case. We now hold that we will apply the *Tongate* rule to all cases still pending on direct appeal at the time *Tongate* was decided. To do so provides a principle of decisionmaking consonant with the reasoning that all newly declared constitutional rules of criminal procedure should apply retrospectively to all convictions not yet final when the rule was established. *Linkletter v. Walker, supra; Tehan v. United States ex rel. Shott, supra.* This resolution of the issue also comports with our duty to "do justice to each litigant on the merits of his own case". *Desist,* at 259. Additionally, today's ruling furthers the goal of treating similarly situated defendants similarly.[5]

### III

We next must consider the issue of whether the trial court erred in ruling to allow Pam's prior robbery and narcotics convictions to be placed in the record in the event Pam testified. The defendant contends that the prejudicial effect of admitting these convictions under ER 609 outweighs its probative value when the defendant is being tried for the identical offense. The court's advance ruling on their admissibility deterred defendant from testifying.

Under ER 609,[6] which became effective April 2, 1979,

---

[5]We specifically do not address the retroactive reach of our decision to the cases that still may raise the issue on collateral attack. This decision also leaves undisturbed our retroactivity precedents as applied to convictions final at the time of decision. *See Brumley v. Charles R. Denney Juvenile Ctr.,* 77 Wn.2d 702, 466 P.2d 481 (1970).

[6]ER 609 provides:

evidence is admissible only if the probative value of admitting the evidence outweighs its prejudicial effect to the defendant.

The decision of whether or not to admit prior convictions for impeachment purposes is within the discretion of the trial court, and will not be disturbed absent a clear showing of abuse. *State v. Thompson*, 95 Wn.2d 888, 632 P.2d 50 (1981). A court should weigh the importance of the jury hearing the defendant's account of events against the importance of the jury knowing of his prior conviction. *State v. Alexis*, 95 Wn.2d 15, 621 P.2d 1269 (1980).

In the instant case, the trial judge was aware of the balancing process necessary under ER 609. Neither conviction involved acts of violence or combativeness which would cause the prejudicial effect to outweigh the probative value. The convictions were offered as relevant to the issue of the defendant's capacity for truth and veracity. The credibility issue was central to defendant's case, as Pam's testimony was most likely to be the only vindicating evidence offered in his behalf. The jury was instructed that "evidence that a witness has been convicted of a crime may be considered by you in deciding what weight or credibility should be given to the testimony of the witness and for no other purpose". Instruction 4. The defendant faced a stiffer penalty for a second conviction, thus providing him with an added incentive to avoid conviction, which the jury should have been apprised of in evaluating his testimony. Additionally, the court could instruct the jury to consider the convictions only for impeachment purposes. We hold that the trial judge did not abuse his discretion in authorizing the admission of Pam's robbery convictions if he testified.

---

"(a) General Rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of 1 year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment."

## IV

Pam also claims that the trial court erred in ruling to admit prior convictions for forgery and narcotics violations for impeachment purposes because such convictions, although prima facie reliable, were proved to be based on constitutionally invalid guilty pleas. The trial court found the defendant had not been advised of the possible maximum sentence before pleading guilty to a 1969 forgery charge. Pam was also unaware of his self–incrimination rights when he pleaded guilty to Uniform Controlled Substances Act violations in 1974.

█ In *Thompson,* at page 895, this court stated that counseled guilty pleas are "prima facie reliable" when the resulting conviction is used solely for impeachment of a witness' credibility in a subsequent criminal prosecution. We specifically characterized the credibility of a witness as being a "purely collateral matter".

It was Pam's burden to establish the existence of facts sufficient to show that a constitutional violation bearing upon the reliability of the conviction occurred. *State v. Roland,* 379 So. 2d 721 (La. 1979); *Clayton v. Haynes,* 517 F.2d 577 (4th Cir. 1975); *Potts v. Estelle,* 529 F.2d 450 (5th Cir. 1976). We find no evidence, however, to suggest that the defendant presented *affirmative* proof of unreliability. Therefore, Pam's convictions for forgery and narcotics were prima facie reliable and could be introduced for impeachment purposes.

## V

Finally, we consider the issue of whether or not ER 404(b) permits the admission of testimony concerning Pam's prior incarceration for a crime for which he was never convicted.

█ ER 404(b) states in part:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as . . . identity . . .

If evidence is relevant to show identity, it is admissible if its probative value is greater than the likelihood of unfair prejudice under ER 403. *State v. Reed,* 25 Wn. App. 46, 604 P.2d 1330 (1979).

The identity of the robber was a crucial issue in the subject case. Eyewitness Dill testified that he was reluctant to identify Pam when he was first shown a photo montage because he had been in jail with him and did not want to be labeled a "snitch". The information that the witness had observed Pam at close range in jail was relevant to establish the witness' credibility concerning his identification of Pam. Such testimony, therefore, was clearly admissible.

## CONCLUSION

We affirm Pam's convictions. We hold, however, that the court erred in failing to separately instruct the jury on the State's "beyond a reasonable doubt" burden of proof on the special verdict forms. Accordingly, the jury's findings under the special interrogatories are set aside and the Board of Prison Terms and Paroles may not restrict Pam's parole under RCW 9.95.040.

ROSELLINI and DOLLIVER, JJ., and CUNNINGHAM, J. Pro Tem., concur.

UTTER, J. (concurring in the result)—I concur in the result reached by the majority. I believe that the majority's analysis fails to recognize the prejudice which may arise from admission for impeachment purposes of a past conviction for a crime identical to that charged in the case at bar. I am far from convinced that the trial court did not abuse its discretion, but need not decide that question because defendant failed to make a proper offer of proof.

Parenthetically, I note that the majority properly avoids deciding one of the issues raised by the defendant, whether *State v. Workman,* 90 Wn.2d 443, 584 P.2d 382 (1978) prohibits enhancement of punishment by a special verdict under RCW 9.95.040, which limits parole board discretion regarding felonies committed with a deadly weapon. We

need not reach the issue in light of the trial court's failure to instruct on the proper burden of proof and thus leave it for another day.

Under ER 609(a), a prior conviction is admissible for impeachment purposes if either (1) the crime was a felony and "the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant" or (2) the crime was one which "involved dishonesty or false statement". The majority apparently concedes that robbery is not a crime "involv[ing] dishonesty or false statement" (*see State v. Moore,* 29 Wn. App. 354, 364, 628 P.2d 522 (1981); 5 K. Tegland, Wash. Prac., *Evidence* § 235, at 502 (2d ed. 1982)); however, it upholds the trial court's ruling that Pam's conviction fits the first category of ER 609(a). Majority, at 757–58.

As ER 609(a)(1) makes clear and the majority correctly points out, the test for admissibility of prior convictions is one of balancing. In *State v. Alexis,* 95 Wn.2d 15, 621 P.2d 1269 (1980), we set out seven factors to be considered. They were: (1) the importance of the defendant's testimony; (2) the length of the defendant's criminal record; (3) the remoteness of the conviction in question; (4) the nature of the prior crime; (5) the age and circumstances of the defendant; (6) the centrality of the credibility issue; and (7) the impeachment value of the prior conviction. *Alexis,* at 19.

The fact that this prior conviction was for an offense identical to that with which the defendant is charged in the present case is of paramount significance. This very situation was addressed by Chief Justice (then Judge) Burger in *Gordon v. United States,* 383 F.2d 936 (D.C. Cir. 1967).

> Where multiple convictions of various kinds can be shown, strong reasons arise for excluding those which are for the same crime because of the inevitable pressure on lay jurors to believe that "if he did it before he probably did so this time." As a general guide, those convictions which are for the same crime should be admitted sparingly; one solution might well be that discretion be exercised to limit the impeachment by way of a similar crime

to a single conviction and then only when the circumstances indicate strong reasons for disclosure, and where the conviction directly relates to veracity.

*Gordon,* at 940. *Accord, State v. Renfro,* 96 Wn.2d 902, 908, 639 P.2d 737 (1982); *People v. Fries,* 24 Cal. 3d 222, 230, 594 P.2d 19, 155 Cal. Rptr. 194 (1979); C. McCormick, *Evidence* § 43, at 89 (2d ed. 1972). This indicates that there should be a strong presumption against the admission of evidence of a prior conviction identical to that for which the defendant is on trial.

In the present case, the other factors enumerated in *Alexis* do not counter this strong presumption. Pam's prior robbery conviction was very remote—it was more than 11 years old. While Pam's credibility would admittedly have been of great importance, the added impeachment value of his prior robbery conviction would have been minimal. In the first place, robbery is only partially probative of credibility. *State v. Moore,* 33 Wn. App. 55, 62, 651 P.2d 765 (1982) (*Moore* II); *People v. Fries, supra* at 229. This is because robbery has elements of both assault and larceny (*Fries,* at 229) and assaultive crimes are of little relevance to credibility (*State v. Renfro, supra* at 908). Secondly, Pam had two other prior convictions which could have been used for impeachment—admitting his robbery conviction as well was only slightly cumulative at best. *Compare State v. Thompson,* 95 Wn.2d 888, 893, 632 P.2d 50 (1981) (prior manslaughter conviction admissible in assault prosecution in part because other conviction, for narcotics violation, was no longer available); *United States v. Cook,* 608 F.2d 1175, 1187 (9th Cir. 1979), *cert. denied,* 444 U.S. 1034 (1980) (prior robbery conviction admissible in robbery prosecution because "the court had reason to believe the defendant would take the stand and palm himself off as a peace–loving member of the American Friends Service Committee with interests in prison reform and social protest"). In particular, Pam's forgery conviction was much more probative of credibility, as well as less remote in time.

It is true that admission of prior convictions for purposes

of impeachment is within the sound discretion of the trial court. *See State v. Thompson, supra* at 892. When that discretion is not sound, however, but is instead abused, we should reverse. *Thompson,* at 892; *Moore* II, at 61. This court should not act as a mere rubber stamp.

In light of these considerations, I would reverse the trial court's ruling if Pam's testimony had been shown by an offer of proof to be of any significance at all. Absent a proper offer of proof, however, Pam waived his right to appeal the trial court's ruling. *See United States v. Fountain,* 642 F.2d 1083, 1088 (7th Cir.), *cert. denied,* 451 U.S. 993 (1981); *United States v. Cook, supra* at 1186. Such an offer requires both a statement by the defendant that he or she would testify if the prior convictions were excluded *and* a general outline of what his or her testimony would be. *Cook,* at 1186. Though he satisfied the first requirement, Pam did not satisfy the second.

An offer of proof is especially important where the issue is admissibility of a prior conviction for purposes of impeachment. An offer not only aids appellate review and self–evaluation by the trial court (*see* 5 K. Tegland, Wash. Prac., *Evidence* § 12 (2d ed. 1982)), but is also necessary for the trial court to evaluate the importance of the defendant's testimony, one of the considerations enumerated in *Alexis.*

Contrary to Pam's assertion below, requiring an offer of proof does not violate a defendant's privilege against self–incrimination. The offer of proof need not necessarily be made until trial. *See* 5 K. Tegland, Wash. Prac., *Evidence* § 12, at 43–44 (2d ed. 1982). Even if it were made prior to trial or a second trial became necessary, moreover, it could not be used as evidence against the defendant, for it would be a classic example of hearsay. Neither would the offer waive either the attorney–client privilege (*see State v. Vandenberg,* 19 Wn. App. 182, 186–87, 575 P.2d 254 (1978), quoting 8 J. Wigmore, *Evidence* § 2327, at 637–38 (rev. ed. 1961) (client's offer of own testimony does not waive attorney–client privilege regarding related communications)) or

the defendant's privilege against self–incrimination[7] (*see United States v. Johnson,* 488 F.2d 1206, 1210 (1st Cir. 1973), quoting 8 J. Wigmore, *supra* § 2276, at 470–72 (testimony at first trial does not waive privilege at second trial); *cf. United States v. Licavoli,* 604 F.2d 613, 623 (9th Cir. 1979), *cert. denied,* 446 U.S. 935 (1980) (waiver of privilege at one proceeding does not extend to second proceeding).

In the circumstances of this case, the failure to exclude Pam's prior robbery conviction was in all likelihood an abuse of discretion. Nonetheless, I would affirm, as the defendant did not preserve the error by a proper offer of proof.

WILLIAMS, C.J., and STAFFORD, BRACHTENBACH, and PEARSON, JJ., concur with UTTER, J.

Reconsideration denied May 26, 1983.

---

[7]Even if the offer is viewed as a statement by the defendant, the general rule that testimony regarding an incident waives the privilege as to related facts and details (*Rogers v. United States,* 340 U.S. 367, 373–74, 95 L. Ed. 344, 71 S. Ct. 438, 19 A.L.R.2d 378 (1951)) is inapplicable. The only reason for that rule is to prevent the defendant from "putting before the trier of fact a one–sided account of the matters in dispute." *Brown v. United States,* 356 U.S. 148, 155, 2 L. Ed. 2d 589, 78 S. Ct. 622, 72 A.L.R.2d 818 (1958); *State v. Robideau,* 70 Wn.2d 994, 999, 425 P.2d 880 (1967). It would thus not apply to an offer of proof since such an offer is not put before the trier of fact.