FILED
COURT OF APPEALS
DIVISION II

2015 MAY 12 AM 8: 41

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44572-7-II |
| Respondent, | |
| v. | |
| JONATHAN LEVI DUNN, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, C.J. — Jonathan Levi Dunn appeals his jury trial convictions for two counts of unlawful possession of a controlled substance with intent to deliver, each with school bus route stop and firearm sentencing enhancements; two counts of unlawful possession of a controlled substance; one count of unlawful possession of less than 40 grams of marijuana; and one count of first degree unlawful possession of a firearm. He argues that the evidence was insufficient to prove the firearm sentencing enhancements and that the trial court violated his right to a public trial by taking peremptory challenges in writing. In a statement of additional grounds for review (SAG),[1] he further argues (1) the two firearm sentencing enhancements subjected him to double jeopardy, (2) the jury was prejudiced because it saw him in shackles, (3) the evidence was insufficient to prove the school bus route stop sentencing enhancements because he had no way of knowing he

---

[1] RAP 10.10.

was within a protected zone, and (4) he received ineffective assistance on various grounds. We hold that the evidence was sufficient to support the firearm sentencing enhancements and that there was no public trial violation. We further hold that his SAG issues either have no merit or cannot be addressed. Accordingly, we affirm.

FACTS

I. BACKGROUND

On August 5, 2012, Longview Police Officers Zachary Ripp and Chris Trevino were on patrol when they observed Dunn drive by and turn into an alley. Aware that Dunn's driver's license was suspended, the officers followed Dunn, turned on their flashing lights and siren, and eventually stopped Dunn. The truck stopped approximately 661 feet from a school bus route stop.

After Dunn got out of his car, the officers arrested him for driving with a suspended license. During a search of Dunn's person, Officer Ripp found $3,940 in cash in one of Dunn's pockets. During a subsequent search of Dunn's truck pursuant to a search warrant, the officers found several diazepam and alprazolam pills in the truck's glove box. The officers also found a backpack behind the seat and to the driver's right. The backpack was visible and within reach from the driver's seat. Officer Ripp later testified that the backpack was in a location where the driver could have reached it or grabbed items out of it.

In the backpack's main compartment, Officer Ripp found 38.1 grams of heroin, 27.1 grams of methamphetamine, 1.4 grams of marijuana, a digital scale, and other drug paraphernalia. In the smaller front pouch, Officer Ripp found a loaded .380 handgun. Officer Ripp "rendered it safe" by removing the loaded magazine and the bullet in the chamber. Report of Proceedings (RP) (Jan. 8, 2013) (Trial) at 58.

2

## II. Procedure

The State charged Dunn with (1) unlawful possession of heroin with intent to deliver (count I), unlawful possession of methamphetamine with intent to deliver (count II), unlawful possession of diazepam (count III), unlawful possession of alprazolam (count IV), unlawful possession of 40 grams or less of marijuana (count V), and first degree unlawful possession of a firearm (count VI).[2] The State also alleged firearm sentencing enhancements and school bus route stop sentencing enhancements for counts I and II.

Dunn pleaded not guilty. During jury selection, counsel exercised their peremptory challenges in a sidebar.

The State's witnesses testified as described above. Dunn presented an unwitting possession defense. David Allen Holmes admitted that he owned the items the officers found in the backpack and testified that Dunn had given him a ride on the day of the arrest and allowed him (Holmes) to use the backpack because his pockets were full.

While discussing the unwitting possession defense jury instruction, defense counsel argued that the instruction applied to the possession with intent to deliver charges because one of the elements was possession of the controlled substance. The State responded that this was essentially a request for a lesser included instruction on counts I and II because the possession with intent to deliver essentially already required a mens rea for the possession element. Defense counsel responded that the unwitting possession defense applied to all the drug charges. But defense counsel also asserted that even if the jury were to find Dunn knew the drugs were there, there was

___

[2] The State also charged Dunn with third degree driving while license suspended or revoked (count VII), but that charge was dismissed without prejudice before trial.

insufficient evidence of intent to distribute. The trial court agreed with the State. Defense counsel expressly stated he was not requesting a lesser included instruction.

After the jury reached its verdict, but before the jury delivered the verdict, the trial court advised the parties that some of the jurors may have inadvertently seen Dunn in shackles because a bailiff had partially opened the jury room door as Dunn was passing by. The trial court stated that because the verdict had been reached, it was "not concerned" about this event. RP (Jan. 10, 2013) at 4.

The jury found Dunn guilty as charged. The jury also found that he was armed with a firearm and within 1,000 feet of a school bus route stop when he committed counts I and II. The trial court imposed 72-month firearm enhancements and 24-month school bus route stop enhancements on counts I and II.

Dunn appeals his convictions and his sentencing enhancements.

## ANALYSIS

### I. SUFFICIENCY OF EVIDENCE: FIREARM SENTENCING ENHANCEMENTS

Dunn first argues that the State failed to present sufficient evidence to establish the two firearm sentencing enhancements. Specifically, he argues that the State failed to prove that the gun was (1) easily and readily accessible or (2) operable. We disagree.

### A. STANDARD OF REVIEW

We review sufficiency of the evidence claims for whether, when viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201,

829 P.2d 1068 (1992). A sufficiency challenge admits the truth of the State's evidence and all reasonable inferences drawn from it. *Salinas*, 119 Wn.2d at 201.

The trier of fact makes credibility determinations, which we will not review. *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004). And we defer to the trier of fact on issues of conflicting testimony and the persuasiveness of evidence. *Thomas*, 150 Wn.2d at 874-75.

### B. EASILY ACCESSIBLE AND READILY AVAILABLE

We first address whether there was sufficient evidence to establish that the firearm was easily accessible and readily available. We hold that it was.

A person is armed with a deadly weapon if it is easily accessible and readily available for use for either offensive or defensive purposes whether to facilitate the crime's commission, to escape the crime scene, to protect contraband, or to prevent investigation, discovery, or apprehension by the police. *State v. Gurske*, 155 Wn.2d 134, 137-39, 118 P.3d 333 (2005). Mere proximity or mere constructive possession is insufficient to establish that a defendant was armed at the time he possessed a controlled substance.[3] *Gurske*, 155 Wn.2d at 138.

Dunn relies on *Gurske*, for the proposition that there was insufficient evidence to find that he had a firearm that was easily accessible and ready for use. *Gurske* is distinguishable.

In *Gurske*, the defendant was arrested for driving with a suspended license. 155 Wn.2d at 136. In a search incident to arrest, the police found a backpack directly behind the driver's seat where Gurske had been sitting. *Gurske*, 155 Wn.2d at 136. Inside the zipped backpack police

---

[3] Additionally, there must be a nexus between the defendant, the crime, and the weapon. *Gurske*, 155 Wn.2d at 140-41. Dunn does not argue that there was insufficient evidence to establish the required nexus.

found a Coleman torch, a holstered handgun under the torch, and three grams of methamphetamine. *Gurske*, 155 Wn.2d at 136. Our Supreme Court held that there was insufficient evidence to show that the firearm was easily accessible and readily available for use because Gurske would have had to exit the vehicle or move into the passenger seat to reach the gun. *Gurske*, 155 Wn.2d at 143.

Here, in contrast, Officer Ripp testified that the backpack was in a location where the driver could have reached it or grabbed items out of it. This testimony, taken in the light most favorable to the State, would allow a rational jury to find beyond a reasonable doubt that the firearm in the backpack was easily accessible and readily available to Dunn.

Citing *State v. Ague-Masters*, 138 Wn. App. 86, 104, 156 P.3d 265 (2007), Dunn further argues that the evidence was insufficient to show the gun was easily accessible and readily available because the police had arrested him before they found the gun. Dunn's reliance on *Ague-Masters* is misplaced.

In *Ague-Masters*, the fact the defendant was already arrested when the law enforcement officers found the gun was not dispositive. In fact, we stated that although the proximity of the defendant to the gun may be a factor, "it is possible for a defendant to be armed during a commission of a crime for purposes of a sentence enhancement even if not arrested in close proximity to the weapon." *Ague-Masters*, 138 Wn. App. at 103. Furthermore, the dispositive fact in *Ague-Masters* was that the officers found the firearms at issue in a locked safe inside the defendant's house, where there was no evidence of a drug lab, and the officers did not find any firearms or evidence of firearm use inside the shed where the drug lab was located. 138 Wn. App.

at 104-05. Here, in contrast, the evidence showed that Dunn was near the backpack, the backpack was accessible to him, and the backpack contained both the gun and the drug evidence.

We hold that there was sufficient evidence that the gun was easily accessible and readily available to Dunn.

## C. OPERABLE WEAPON

Dunn next argues that there was no evidence proving that the firearm was operable because "[t]here was no testimony here the gun . . . could actually fire a round." Br. of Appellant at 10. We disagree.

In *State v. Recuenco*, our Supreme Court acknowledged that to prove a firearm sentencing enhancement, the State had to "introduce facts upon which the jury could find beyond a reasonable doubt the weapon in question falls under the definition of a 'firearm:' 'a weapon or device from which a projectile may be fired by an explosive such as gunpowder.'" 163 Wn.2d 428, 437, 180 P.3d 1276 (2008) (quoting 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 2.10.01 (Supp. 2005)). The court also stated, "We have held that a jury must be presented with sufficient evidence to find a firearm operable under this definition in order to uphold the enhancement." *Recuenco*, 163 Wn.2d at 437 (citing *State v. Pam*, 98 Wn.2d 748, 754-55, 659 P.2d 454 (1983), *overruled in part on other grounds by State v. Brown*, 111 Wn.2d 124, 761 P.2d 588, 787 P.2d 906 (1988)). Assuming, but not deciding, that *Recuenco* requires the jury to find that a firearm is operable, we hold that the evidence here is sufficient to prove that element.

Operability may be inferred without any direct evidence of operability. *State v. Mathe*, 35 Wn. App. 572, 581-82, 668 P.2d 599 (1983), *aff'd on other grounds*, 102 Wn.2d 537, 688 P.2d

859 (1984). Officer Ripp described the gun as a .380 handgun and testified that the gun was loaded, that he had to unload the gun to "render[ ] it safe," and that the gun had a serial number. RP (Jan. 8, 2013) (Trial) at 58. And the gun, magazine, and cartridges were admitted as evidence and available to the jury during its deliberations. Taken in the light most favorable to the State, this was sufficient to show that the firearm was an operable firearm. *See Mathe*, 35 Wn. App. at 581-82 (robbery victims' identifications of the weapon the defendant threatened them with as a gun was sufficient circumstantial evidence to show it was a real and operable firearm); *State v. Bowman*, 36 Wn. App. 798, 803, 678 P.2d 1273 (eyewitness testimony describing a real gun and recounting the threat to use it was sufficient to establish the existence of a real, operable gun in fact), *review denied*, 101 Wn.2d 1015 (1984). Accordingly, this argument fails.

## II. NO PUBLIC TRIAL VIOLATION

Dunn next argues that the trial court violated his Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution guarantees to a public trial by allowing the parties to exercise their peremptory strikes in writing without first conducting a *Bone-Club*[4] analysis. We have previously held in *State v. Dunn*, 180 Wn. App. 570, 575, 321 P.3d 1283 (2014), *review denied*, 181 Wn.2d 1030 (2015), and *State v. Marks*, 184 Wn. App. 782, 789, 339 P.3d 196 (2014), that exercising peremptory challenges in writing does not implicate a defendant's public trial rights. Accordingly this argument fails.

## III. SAG ISSUES

Dunn also raises several issues in his pro se SAG.

---

[4] *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995).

A. DOUBLE JEOPARDY

Dunn first argues that he was subject to double jeopardy because each possession with intent to deliver included a firearm sentencing enhancement. We have repeatedly rejected this argument. *In re Pers. Restraint of Delgado*, 149 Wn. App. 223, 240, 204 P.3d 936 (2009) (imposing multiple firearm sentencing enhancements does not constitute double jeopardy); *State v. Nguyen*, 134 Wn. App. 863, 866, 142 P.3d 1117 (2006) (same), *review denied*, 163 Wn.2d 1053, *cert. denied*, 555 U.S. 1055 (2008); *State v. Ward*, 125 Wn. App. 243, 251-52, 104 P.3d 670 (2004) (same), *abrogated in part on other grounds by State v. Grier*, 171 Wn.2d 17, 35-38, 246 P.3d 1260 (2011). Accordingly, this argument fails.

Dunn also appears to argue that he was subject to double jeopardy because he was convicted of the firearm enhancements and first degree unlawful possession of a firearm. This argument also fails.

The double jeopardy clause of the Fifth Amendment to the United States Constitution provides that "[n]o person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb."[5] The double jeopardy clause bars multiple punishments for the same offense. *State v. Villanueva-Gonzalez*, 180 Wn.2d 975, 980, 329 P.3d 78 (2014). We review double jeopardy claims de novo. *Villanueva-Gonzalez*, 180 Wn.2d at 979-80.

"'In order to be the same offense for purposes of double jeopardy[,] the offenses must be the same in law and in fact.'" *State v. Calle*, 125 Wn.2d 769, 777, 888 P.2d 155 (1995) (internal

---

[5] Article I, section 9 of the Washington State Constitution provides that "[n]o person shall . . . be twice put in jeopardy for the same offense." The two clauses provide the same protection. *In re Pers. Restraint of Borrero*, 161 Wn.2d 532, 536, 167 P.3d 1106 (2007), *cert. denied*, 552 U.S. 1154 (2008).

quotation marks omitted) (quoting *State v. Vladovic*, 99 Wn.2d 413, 423, 662 P.2d 853 (1983)). "'If there is an element in each offense which is not included in the other, and proof of one offense would not necessarily also prove the other, the offenses are not constitutionally the same and the double jeopardy clause does not prevent convictions for both offenses.'" *Calle*, 125 Wn.2d at 777 (quoting *Vladovic*, 99 Wn.2d at 423).

Application of these principles makes clear that the firearm enhancements and the crime of unlawful possession of a firearm are not the same offenses for purposes of the double jeopardy clause. In order to convict Dunn of first degree unlawful possession of a firearm, the jury was required to find that he had knowingly possessed a firearm and that he was previously convicted or found not guilty by reason of insanity of a serious offense. RCW 9.41.040(1)(a). In contrast, the firearm sentencing enhancements required the jury to determine that Dunn had committed the substantive crimes—unlawful possession of a controlled substance with intent to deliver—and that he was armed with a firearm during the commission of those offenses. RCW 9.94A.533(3). Having been previously convicted or found not guilty by reason of insanity of a serious offense is not an element of the firearm enhancements, and possession of a controlled substance with intent to deliver is not an element of unlawful possession of a firearm. Accordingly, each offense contains an element that the other does not, and the first degree unlawful possession of a firearm charge and the firearm enhancements are not the same in law and in fact; thus, imposing the firearm enhancements does not amount to double jeopardy. *Calle*, 125 Wn.2d at 777.

## B. SHACKLES

Dunn next argues that the jury was prejudiced because it saw him in shackles. "The mere fact that a jury sees an inmate wearing shackles does not mandate reversal." *State v. Rodriguez,*

146 Wn.2d 260, 270-71, 45 P.3d 541 (2002). The defendant must show prejudice, namely that seeing him in shackles influenced the jury's verdict. *State v. Elmore*, 139 Wn.2d 250, 274, 985 P.2d 289 (1999), *cert. denied*, 531 U.S. 837 (2000). The record shows that the incident during which the jury may have seen Dunn in shackles was after the jury had reached its verdict. Thus, this event could have no impact on the verdict and any potential error is clearly harmless.[6]

## C. SUFFICIENCY OF EVIDENCE FOR THE SCHOOL BUS ROUTE STOP ENHANCEMENTS

Dunn further argues that he had no knowledge that he was in a school bus route stop zone and had no way of knowing he was in a school bus route stop zone because school was not in session. But a defendant's actual knowledge of school bus route stops designated by the school district is irrelevant if information about the location of school bus route stops is available through objective means, such as contacting the school district's director of transportation. *State v. Becker*, 132 Wn.2d 54, 62, 935 P.2d 1321 (1997) (citing *State v. Coria*, 120 Wn.2d 156, 167, 839 P.2d 890 (1992)). Dunn has not shown that he could not have determined whether he was near a school bus route stop zone by contacting the director of transportation or other means. Accordingly, this argument also fails.

## D. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, Dunn argues that he received ineffective assistance on several grounds. This argument also fails.

---

[6] Dunn may also be arguing that the fact he was shackled every time he was escorted to the courtroom was prejudicial. But any evidence related to this assertion is outside the record, so we will not consider this issue. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995) (appropriate means of raising issues that require evidence or facts from outside the record is to file a personal restraint petition).

### 1. STANDARD OF REVIEW

We review claims of ineffective assistance of counsel de novo. *State v. White*, 80 Wn. App. 406, 410, 907 P.2d 310 (1995), *review denied*, 129 Wn.2d 1012 (1996). To demonstrate he received ineffective assistance of counsel, Dunn must show that

> (1) defense counsel's representation was deficient, *i.e.*, it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, *i.e.*, there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different.

*State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). "A failure to establish either element of the test defeats the ineffective assistance of counsel claim." *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 673, 101 P.3d 1 (2004).

We presume that counsel's representation was effective. *Grier*, 171 Wn.2d at 33. Dunn can overcome "the presumption of reasonable performance by demonstrating that 'there is no conceivable legitimate tactic explaining counsel's performance.'" *Grier*, 171 Wn.2d at 33 (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

### 2. PHOTOGRAPHIC EVIDENCE

Dunn argues that he received ineffective assistance of counsel because his counsel failed to ask for a continuance to allow counsel time to speak to Dunn about certain photographs. Dunn asserts that these photographs were taken 10 to 15 minutes before the officers pulled him over and showed another man with a backpack getting in and out of his truck. He contends that these photographs would have assisted with his defense.

At the start of the trial, defense counsel advised the court that he had received "a number of photos" 20 minutes prior from the State. RP (Jan. 8, 2013) at 14. Defense counsel stated that

12

these photographs were apparently taken by an Officer Scott McDaniel and that he (counsel) wanted to "endorse Officer McDaniel" as a defense witness to authenticate the photographs if he later chose to admit them after talking to Dunn. RP (Jan. 8, 2013) at 14.

The record suggests that defense counsel intended to talk to Dunn about these photographs. Whether counsel in fact talked to Dunn and what Dunn then told him about these photographs is outside the record. Additionally, although Dunn attaches copies of photographs to his SAG, they are not part of the official record on appeal. Because the photographs, information about these photographs, and whether defense counsel talked to Dunn about the photographs are all outside the record, we cannot determine if defense counsel should have moved for a continuance and we decline to further address this issue. *McFarland*, 127 Wn.2d at 335 (burden is on the appellant alleging ineffective assistance of counsel to establish deficient representation based on the record established in the proceedings below; appropriate means of raising issues that require evidence or facts from outside the record is to file a personal restraint petition).

### 3. FAILURE TO REQUEST A LESSER INCLUDED INSTRUCTION

Dunn also appears to assert that his trial counsel should have requested a lesser included instruction, apparently on the two unlawful possession with intent to deliver charges.

Whether to request a jury instruction on a lesser included offense is a tactical decision. *Grier*, 171 Wn.2d at 39. "Thus, assuming that defense counsel has consulted with the client in pursuing an all or nothing approach, a court should not second-guess that course of action, even where, by the court's analysis, the level of risk is excessive and a more conservative approach would be more prudent." *Grier*, 171 Wn.2d at 39. The record shows that defense counsel considered whether to seek a lesser included offense instruction so he could pursue an unwitting

possession defense to counts I and II and that counsel chose not to request the lesser included instruction because of the lack of evidence of intent to distribute the drugs found in the backpack. The record does not, however, show whether defense counsel consulted with Dunn about whether to seek a lesser included offense instruction. But even if we assume defense counsel did not consult with Dunn, counsel's all or nothing approach appears reasonable given that his counsel could choose to tactically defend on the possibility that the State could not prove to the jury the "intent to deliver" element of the charges. Accordingly, this argument fails.

### 4. SENTENCING

Dunn next argues that his counsel made no argument at sentencing and left it up to the State to "explain" the sentencing guidelines. But Dunn does not explain what difference it would have made if his counsel had presented argument at sentencing, and we are not required to search the record for any possible issues regarding Dunn's sentencing. RAP 10.10(c) (appellant's SAG issues must advise the court of the nature and occurrence of the alleged errors). Accordingly, we do not address this issue further.

### 5. CHOICE NOT TO TESTIFY

Finally, Dunn states that he chose not to testify because he did not want to be prejudiced by his history and argues that his counsel did not warn him that if he did not testify it would look like he was admitting to the crimes. What defense counsel advised or did not advise Dunn about when he was considering whether to testify is outside the record. Accordingly, we do not address this issue further.

14

No. 44572-7-II

In summary, we hold that the evidence was sufficient to support the firearm sentencing enhancements and that there was no public trial violation. We further hold that Dunn's SAG issues either have no merit or cannot be addressed. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, C.J.

We concur:

WORSWICK, J.

MELNICK, J.

15